STICKNEY et al., Appellees,

v.

TULLIS–VERMILLION et al., Appellants, et al.

[Cite as *Stickney v. Tullis–Vermillion,* 165 Ohio App.3d 480, 2006-Ohio-842.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2004 CA 83.

Decided Feb. 24, 2006.

482

John R. Butz and Tammi J. Angle, for appellees.

Thomas H. Lagos, for appellants.

WOLFF, Judge.

{¶ 1} Cynthia A. Tullis–Vermillion and Melanie J. Tullis appeal from a judgment of the Clark County Court of Common Pleas, which granted the request of David and Brenda Stickney for specific performance of the options contained in

the trusts of Patricia and Nathan Tullis and ordered the trustees of the trusts to sell all of the farm property, known as the Tullis Farm, to the Stickneys at the appraised value of $1,046,500.

{¶ 2} The following facts are undisputed.

{¶ 3} Brenda Stickney, Cynthia Tullis–Vermillion, Karen Tullis, Melanie Tullis, and Nancy Thickel are the five daughters of Patricia and Nathan Tullis. Patricia and Nathan Tullis owned approximately 440 acres of real property located on Neer Road in Pleasant Township, Clark County, Ohio ("the Tullis Farm"); each held a one-half undivided interest in the farm. The Stickneys have lived on the farm for more than 30 years. David Stickney farmed the land with Nathan Tullis for more than 25 years and has continued to do so since Nathan's death.

{¶ 4} On August 28, 1993, Nathan Tullis created a revocable trust ("the Nathan Tullis Trust"), which named his daughters as cotrustees. Article IV(E) of the Nathan Tullis Trust provided that his interest in the family farm "shall be devised and given to my children, in equal shares, subject to the following: At any time this Trust is in effect or within six (6) months after the death of myself and my wife, Patricia M. Tullis, Brenda Stickney and David B. Stickney, shall have the option of purchasing all or any part of the farm at the appraised market value on such terms as my Trustee, or daughters, if after the death of myself and my wife, may agree upon. The children of any deceased child o[f] mine shall take their parent's share, in equal shares." Nathan Tullis died testate on April 19, 1997. His one-half undivided interest in the Tullis Farm passed into his trust upon his death.

{¶ 5} On June 29, 1999, Patricia Tullis created a revocable trust ("the Patricia Tullis Trust"), which also named her five daughters as cotrustees. Paragraph 6 of the trust also granted the Stickneys an option to purchase the Tullis Farm upon her death. It provided:

{¶ 6} "For a period of two (2) years following the Grantor's death, the Grantor's daughter and son-in-law, BRENDA STICKNEY and DAVID B. STICKNEY, shall have the right and option to purchase all, but not less than all, of the real property titled in the trust at the time of the Grantor's death, or transferred to the trust by reason of the Grantor's death, for a price equal to its value for agricultural purposes (the value at which the property would be appraised if it were subject to an 'agricultural easement' as defined in Section 5301.67 of the Ohio Revised Code). The option may be exercised at any time within such two-year period by the optionees' delivery of written notice of such exercise to the holders of legal title to the real property. Closing of the purchase shall take place within sixty (60) days following exercise of the option. Prior to closing, the Trustee (or the trust beneficiaries if they have succeeded to the Trustee's legal title to the real property) may grant an agricultural easement

over the real property to an organization qualified to hold such an easement. In the event of any such grant, the optionees shall take title to the real property at closing subject to such easement."

{¶ 7} Patricia Tullis died on July 5, 2001. Although an amended trust agreement had been prepared, it had not been signed prior to Patricia's death. On August 30, 2001, the cotrustees of the trusts chose Jeffrey Harvey to perform an appraisal of the property. Sometime after January 5, 2002, Harvey sent his appraisal to Charles Swaney, who had been Patricia Tullis's attorney and was assisting her daughters in the administration of her estate. Harvey's appraisal valued the property at $1,046,500. The Stickneys subsequently hired Gary Flinn to represent them regarding the options in the trusts. On June 27, 2002, Flinn advised the cotrustees that the Stickneys were exercising the options in the Nathan Tullis Trust and the Patricia Tullis Trust at the price of $1,046,500. They scheduled the closing for July 26, 2002. The Stickneys and Karen Tullis attended the closing but the remaining cotrustees did not attend. Consequently, the closing did not occur.

{¶ 8} On August 26, 2002, the Stickneys filed an action for specific performance of the options, seeking an order to direct the cotrustees to convey the real estate to them for the purchase price of $1,046,500. They also sought damages stemming from the cotrustees' refusal to convey the property. Karen Tullis answered the complaint by taking "a neutral position" in the case; she indicated that she stood "ready to transfer all Tullis Farm property (land and buildings) to the plaintiffs in this case." Cynthia Tullis–Vermillion, Melanie Tullis, and Nancy Thickel opposed the Stickneys' action and asserted a counterclaim against Brenda, seeking an order directing her to transfer the portion of the farm owned by the trustees of their father's trust to each of Nathan's children free and clear of the option. They also filed a cross-claim against Karen, seeking a similar order. Cynthia, Melanie, and Nancy further sought a declaratory judgment as to the purchase price of the Stickneys' option under their mother's trust.

{¶ 9} Beginning on June 30, 2003, a bench trial was conducted. On October 28, 2004, the court found in favor of the Stickneys and dismissed Cynthia, Melanie, and Nancy's counterclaim, cross-claim, and request for declaratory judgment. The court found, in part:

{¶ 10} "[T]he intent of both Mr. and Mrs. Tullis in setting up these trusts was to treat each of their daughters fairly and, if possible, allow the family farm to continue operating as a family farm. To that end each trust included provisions granting the Plaintiffs an opportunity to purchase the farm from the trusts for at a fair market value when considered for agricultural use. * * *

{¶ 11} "The Plaintiffs agreed to an extension of time under the Nathan Tullis Trust, a necessary step if for no other reason than the trustees did not have an

appraisal of the property until after the expiration of the six months, during which the Plaintiff[s] could exercise their option to purchase the farm property. All of the trustees agreed upon using Mr. Jeff Harvey to appraise the farm property and accepted the appraisal for the purpose of filing the estate taxes. The appraisal by Mr. Harvey set the value of the property at $1,046,500.00.

{¶ 12} "After the appraisal was accepted, the Plaintiffs arranged for a loan and made a formal offer to purchase the real estate for the appraised value. At the time of the closing the Defendants refused to sell the farm at the value set forth in the Harvey appraisal. Three of the Defendants had a separate appraisal completed, which resulted in a higher value being placed upon the property.

{¶ 13} "The Court finds that the Plaintiffs have met their burden of proof and have a right to purchase the farm property at the price set forth in the Harvey appraisal ($1,046,500.00)."

{¶ 14} The court thus ordered the trustees to transfer the property in both the Nathan Tullis and Patricia Tullis trusts to the Stickneys at that appraised value.[1]

{¶ 15} Cynthia and Melanie raise four assignments of error on appeal.

{¶ 16} I. "The decision of the trial court in extending the period of time during which the plaintiffs could exercise their option to purchase the one-half of the real estate in the Nathan C. Tullis trust is barred by § 1335.05 of the Ohio Revised Code."

■ {¶ 17} In their first assignment of error, Melanie and Cynthia claim that the alleged extension granted to the Stickneys to exercise the option in the Nathan Tullis Trust was unenforceable because it did not comply with the statute of frauds.

{¶ 18} As stated above, under Article IV(E) of the Nathan Tullis Trust, the Stickneys had six months from the date of Patricia Tullis's death to exercise the option to purchase Nathan's interest in the Tullis Farm. Thus, under the trust, the Stickneys had until January 5, 2002, to exercise the option. Although the record indicates that the Stickneys had at least two conversations with Swaney regarding the option prior to January 5, 2002, there is no evidence that the Stickneys informed the cotrustees of their intention to exercise the option prior to January 5, 2002. Rather, Brenda testified that her husband had indicated at the March 2002 trustee meeting that he intended to purchase the farm. The Stickneys did not provide written notice to the cotrustees of their intent to exercise the options until June 27, 2002, when the cotrustees and Swaney were notified in writing by Gary Flinn, the Stickneys' attorney. Thus, the Stickneys'

---

1. During the trial, the Stickneys waived their claim to money damages.

attempt to exercise the option in the Nathan Tullis Trust was untimely unless the cotrustees had agreed to permit the Stickneys to exercise the option in that trust for a period of one year from Patricia's death.

{¶ 19} As an initial matter, we question whether the cotrustees had authority under the terms of the Nathan Tullis Trust to extend the option granted to the Stickneys in Article IV(E) of the trust. "[T]he powers and duties of a trustee are controlled by the terms of the trust instrument." *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.* (1997), 79 Ohio St.3d 98, 102, 679 N.E.2d 1084. "When construing provisions of a trust, [the court's] primary duty is to 'ascertain, within the bounds of the law, the intent of the * * * settlor.' " *In re Trust of Brooke* (1998), 82 Ohio St.3d 553, 557, 697 N.E.2d 191, quoting *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706. The settlor's intention is determined by considering the language used in the trust, reading all the provisions of the trust together. *Mumma v. Huntington Natl. Bank of Columbus* (1967), 9 Ohio App.2d 166, 169, 38 O.O.2d 183, 223 N.E.2d 621, citing 53 Ohio Jurisprudence 2d 425, § 22. When the terms of the trust are not ambiguous, the intent of the settlor can be determined by the express language of the trust. *Daloia,* 79 Ohio St.3d at 103, 679 N.E.2d 1084. Words used in the trust instrument are presumed to be used according to their common, ordinary meaning. *Brooke,* 82 Ohio St.3d at 557, 697 N.E.2d 191.

{¶ 20} Although Article VI grants broad powers to the cotrustees, we find no provision that grants them the authority to amend the express provisions of the trust. The express language of Article VI(E) set forth a specific six-month limit on the time period during which the Stickneys could exercise an option to purchase any or all of the Tullis Farm. Based on the terms of the trust, the trustees lacked the authority to extend or revive the option. Accordingly, any agreement by Nathan's daughters to allow the Stickneys to purchase Nathan's interest in the Tullis Farm was made independent of the option provision in the Nathan Tullis Trust.

{¶ 21} Assuming that Nathan's daughters had agreed to provide the Stickneys with an option to purchase Nathan's interest in the farm until July 5, 2002, under the remaining terms used in the Nathan Tullis Trust, we agree with Cynthia and Melanie that the alleged agreement violated the statute of frauds and, thus, was unenforceable.

{¶ 22} The statute of frauds is essentially an evidentiary rule the purpose of which is to protect the integrity of certain enumerated contractual transactions. The statute requires that these transactions be in writing or accompanied by a memorandum witnessing the transaction. *Lacy v. Adair* (Nov. 22, 1989), Greene App. No. 89 CA 0018, 1989 WL 150809. Specifically, R.C. 1335.04

provides that an assignment or grant of an interest in land must be by deed or by a written document, signed by the party (or the party's agent) who is assigning or granting the interest. R.C. 1335.05 provides that "[n]o action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." Pursuant to R.C. 1335.05, options to purchase real property fall within the statute of frauds. *Hubbard v. Dillingham,* Butler App. No. CA2002-02-045, 2003-Ohio-1443, 2003 WL 1477698, ¶ 21; *Ridge Stone Builders & Developers, Ltd. v. Gribbin,* Wood App. No. WD-03-009, 2003-Ohio-5188, 2003 WL 22233562, ¶ 23.

{¶ 23} By requiring that contracts concerning real estate be evidenced by a signed writing, the statute of frauds " 'serves to ensure that transactions involving realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.' * * * If a contract falling under the statute of frauds is not properly memorialized in a signed writing, the effect of the statute is to render an otherwise valid contract unenforceable." *Beaverpark Assocs. v. Larry Stein Realty Co.* (Aug. 30, 1995), Montgomery App. No. 14950, 1995 WL 516469, quoting *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 16 OBR 391, 476 N.E.2d 388.

{¶ 24} "A writing that satisfies the Statute of Frauds need not express the totality of the agreement between the parties. Rather, the writing need only evidence that the parties reached an agreement. * * * A writing is not sufficient to fulfill the Statute of Frauds 'unless it contains the essential terms of the agreement expressed with such clearness and certainty that they may be understood from the memorandum itself or some other writing to which it refers.' * * * In the realm of real estate transactions, a memorandum of an oral agreement satisfies the Statute of Frauds if it (1) identifies the subject matter of the transaction, (2) establishes that a contract has been reached, and (3) states the essential terms of the agreement. * * * If the writing does not contain words which can reasonably be construed as words of promise or agreement, the writing is not a memorandum for purposes of the Statute of Frauds." *Lacy v. Adair* (Nov. 22, 1989), Greene App. No. 89 CA 0018.

{¶ 25} In support of their assertion that the option had been extended, the Stickneys presented the minutes from the March 9, 2002 trustee meeting. Under paragraph four, labeled "Chuck Swaney, Review of forming a Legal Entity (Tullis

Farms LTD.),'" the third bulleted paragraph stated: "Farm Lease Agreement, David & Brenda Stickney have 1 year from Mother's Death to exercise their option to purchase the farm at an appraised value. The closing would be 30 days from the option date (8/05)." Brenda testified that the minutes reflected that the cotrustees had agreed to give the Stickneys one year from their mother's death to purchase the farm. Swaney also testified that all of the cotrustees had agreed at the March 2002 meeting to extend the option in the Nathan Tullis Trust to one year.

{¶ 26} In contrast, Nancy testified that the Stickneys' option to purchase the farm under the Nathan Tullis Trust had expired without being exercised. Melanie testified that there had been no agreement to extend the option deadline in the Nathan Tullis Trust. Karen testified that she did not remember being asked to extend the deadline to purchase the one-half interest in the Nathan Tullis Trust. In addition, Nancy and Melanie both indicated that during the March 9, 2002 meeting, the cotrustees had discussed leasing the farm to the Stickneys and that the option to purchase the farm was part of the lease discussion.

{¶ 27} In our judgment, the minutes of the March 9, 2002, do not evidence an agreement to extend a one-year option to the Stickneys to purchase Nathan Tullis's interest in the farm. Although the minutes reflect that the cotrustees had agreed to provide the Stickneys a one-year option from Patricia's death to purchase the farm, the minutes do not reflect that an oral contract, supported by consideration, had been reached. Moreover, the minutes of the March 9, 2002 meeting were not signed by Melanie, the secretary, nor any of the other cotrustees. Although the minutes from the April 6, 2002 meeting indicated that Melanie's March 2002 minutes were approved, this is insufficient to demonstrate that the writing had been signed. In sum, although the trial court could have reasonably concluded that the cotrustees had "agreed to an extension of time under the Nathan Tullis Trust," there is no evidence that the "agreement" was anything other than a gratuitous promise. Moreover, the evidence of that alleged agreement did not satisfy the statute of frauds.

{¶ 28} The Stickneys assert that they have satisfied the doctrine of part performance, which removes a contract from the operation of the statute of frauds. "In order to remove a contract from the statute of frauds pursuant to the doctrine of part performance, the party that is relying on the agreement must have undertaken 'unequivocal acts * * * which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo.*'" *Beaverpark,* Montgomery App. No. 14950, 1995 WL 516469, quoting *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 287, 31 O.O.2d 557, 209 N.E.2d 194.

Thus, a party seeking to establish part performance must demonstrate that he has performed acts in exclusive reliance on the oral contract and that such acts have changed his position to his prejudice. *Geiger v. Geiger* (Nov. 16, 1993), Montgomery App. No. 13841, 1993 WL 476247. In cases involving real estate contracts, courts have required acts such as possession, payment of consideration, and improvements on the land in order to find part performance of the contract. Id.

{¶ 29} The Stickneys argue that they acted in reliance upon the cotrustees' promise to extend the option on the Nathan Tullis Trust by exploring financing, submitting a mortgage application, having an appraisal and a title search performed, and making an $8,400 deposit on a loan commitment. As stated above, the record does not support a conclusion that the Stickneys entered into a contract to purchase the Tullis Farm. Even assuming that a contact existed, we are unpersuaded that the Stickneys' actions were sufficient to invoke the doctrine of part performance.

{¶ 30} Because the option in the Nathan Tullis Trust had expired and the alleged agreement to extend an option to the Stickneys to purchase the farm under the terms stated in the option provision of the Nathan Tullis trust was unenforceable, the trial court erred in ordering the cotrustees to transfer Nathan's one-half interest in the Tullis Farm to the Stickneys.

{¶ 31} The first assignment of error is sustained.

{¶ 32} II. "The trial court erred in ordering the trustees of the Nathan C. Tullis Trust to convey the one-half (½) interest in the real estate at a price of $1,046,000.00 ($523,000.00 for the one-half (½))."

{¶ 33} In their second assignment of error, Cynthia and Melanie assert that the trial court did not place an appropriate value on the one-half interest in the Nathan Tullis Trust. They emphasize that the trust granted the Stickneys an option to purchase any or all of the farm "at the appraised market value." Citing the appraisals performed by Gerald Clark and Ron Mumma subsequent to the notification by the Stickneys of their intent to exercise the options, Cynthia and Melanie argue that the purchase price for the one-half interest of the Tullis Farm governed by the Nathan Tullis Trust should be, at a minimum, $767,500.

{¶ 34} As stated, we have concluded that the option set forth in the Nathan Tullis Trust was not properly extended until one year after Patricia's death and, consequently, the option expired on January 5, 2002, without being exercised by the Stickneys. Accordingly, we have concluded that the trial court erred in ordering the cotrustees to transfer Nathan's one-half interest in the Tullis Farm to the Stickneys under the terms of his trust. Thus, in light of our ruling on the first assignment of error, we need not address whether the trial court properly

determined that $523,250 (one-half of the $1,046,500 appraisal value determined by Harvey) satisfied the "appraised market value" provision in the Nathan Tullis Trust.

{¶ 35} The second assignment of error is overruled as moot.

{¶ 36} III. "The decision of the trial court in ordering the sale of the one-half (½) interest of the farm in the Patricia M. Tullis Trust for a purchase price of $523,250.00 being one-half (½) of $1,046,500.00 without a specific requirement of an agricultural easement directly controverts the terms of the Patricia M. Tullis Trust, which held an undivided one-half (½) interest in the farm property and the purchase price should be $750,000."

{¶ 37} In their third assignment of error, Cynthia and Melanie claim that the trial court erred in ordering the cotrustees to convey the one-half interest in the farm held by the Patricia Tullis Trust to the Stickneys at the purchase price of $523,250 and without an agricultural easement. They argue that the purchase price should be $750,000, in accordance with the value determined by Ron Mumma, and that an agricultural easement was required to avoid a windfall to the Stickneys. We disagree.

{¶ 38} Paragraph six of the Patricia Tullis Trust granted the Stickneys an option to purchase all of her interest in the Tullis Farm "for a price equal to its value for agricultural purposes (the value at which the property would be appraised if it were subject to an 'agricultural easement' as defined in Section 5301.67 of the Ohio Revised Code)." Mr. Harvey testified that he had appraised the property as a whole for use as a farm and determined its value to be $1,046,500. He stated that he did not look at the farm with an eye toward an agricultural easement, nor did he appraise its development value, which would have considered the value of the farm if it were divided and sold. In other words, he stated that his appraisal was for agricultural use but not restricted solely to agricultural use, and that an agricultural easement could have reduced the value by 30 to 45 percent. Harvey testified that his appraised value was "in the middle range" of farm sales in that immediate area.

{¶ 39} In support of their assertion that the farm was undervalued in the Harvey appraisal, Cynthia, Melanie, and Nancy offered the testimony of Gerald Clark and of Ron Mumma. Clark, who had been hired by Melanie, Cynthia, and Nancy in their individual capacities, testified that the value of the Tullis Farm as agricultural land was $1,280,000, and that the property's development value was $1,535,000. Clark stated that the presence of an agricultural easement would not affect its agricultural value. Mumma, who was hired by Cynthia to appraise the farm, testified that the farm's value for agricultural use was $1,500,000. He

further indicated that if the farm were sold in smaller tracts, the value would increase by approximately 20 percent.

{¶ 40} Although the court did not indicate to what extent it had credited the testimony of each of the appraisers, the trial court could have reasonably concluded that $1,046,500 represented the agricultural value of the property as if it were subject to an agricultural easement, as required by the Patricia Tullis Trust. The fact-finder may credit all, any part, or none of a witness's testimony. Here, the trial court could have credited Harvey's testimony that the farm as a whole for use as a farm was worth $1,046,500 and credited Clark's testimony that an agricultural easement would not affect the farm's agricultural value.

{¶ 41} Moreover, the trial court properly found no basis to impose an agriculture easement under the circumstances presented. Under its express terms, the Patricia Tullis Trust did not impose an agricultural easement on the farm as a condition of the Stickneys' exercise of the option. Rather, the reference to an agricultural easement merely provided clarification as to how the property should be valued in determining the purchase price under the option. Moreover, the trust expressed that the Stickneys would take title to the farm subject to the agricultural easement if the cotrustees had granted an agricultural easement to a qualified organization prior to closing on the Stickneys' purchase of the farm under the option. While the trust permitted the cotrustees to grant an agricultural easement to a qualified organization, the trust did not require the cotrustees to do so. Because there is no evidence that the cotrustees had granted an agricultural easement to a qualified organization, the trial court properly omitted the imposition of an agricultural easement from its order to convey the one-half interest in the Patricia Tullis Trust to the Stickneys.

{¶ 42} The third assignment of error is overruled.

{¶ 43} IV. "The trial court erred by failing to properly apply the evidence presented in the transcript. The decision is against the manifest weight of the evidence introduced at trial."

{¶ 44} In their fourth assignment of error, Cynthia and Melanie claim that the trial court's judgment was against the manifest weight of the evidence.

{¶ 45} In reviewing a claim that the judgment is not supported by the evidence, we are guided by the holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; see *Lykins v. Miami Valley Hosp.,* 157 Ohio App.3d 291, 2004-Ohio-2732, 811 N.E.2d 124, at ¶ 112. "Furthermore, we must presume the findings of the trier of fact are correct because the trier of fact

is best able to observe the witnesses and use those observations in weighing the credibility of the testimony." *Lykins*, supra, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 10 OBR 408, 461 N.E.2d 1273.

{¶ 46} First, Cynthia and Melanie claim that the evidence failed to support the trial court's finding that the Stickneys had exercised their option under the Nathan Tullis Trust in a timely fashion. They argue that the record does not support the court's conclusion that the cotrustees agreed in writing to extend the option period in that trust. For the reasons stated in our discussion of the first assignment of error, we agree. The option provision in the Nathan Tullis Trust was not exercised in a timely fashion.

{¶ 47} Second, Cynthia and Melanie assert that there was no meeting of the minds regarding the purchase price of the farm. To the extent that Cynthia and Melanie challenge the price for Nathan's one-half interest in the farm, that argument is moot. As to Patricia's one-half interest, Patricia's trust stated that the Stickneys had an option to purchase her interest in the farm "for a price equal to its value for agricultural purposes" and that they could exercise the option by "delivery of written notice of such exercise to the holders of legal title to the real property." Here, the record demonstrates that the Stickneys timely notified the cotrustees of the Patricia Tullis Trust in writing that they were exercising the option at the price of $1,046,500 for the entire farm. The trial court reasonably concluded that the Stickneys' actions met the terms of the Patricia Tullis Trust. The trial court's order to convey the one-half interest in the Patricia Tullis Trust was not against the manifest weight of the evidence.

{¶ 48} Finally, Cynthia and Melanie contend that the trial court failed to acknowledge the differing methods of valuation for each trust and the agricultural language found in the Patricia Tullis Trust. Again, to the extent that this assertion concerns the Nathan Tullis Trust, it is moot. As to the Patricia Tullis Trust, we conclude that the trial court's ruling is adequately supported by the record.

{¶ 49} The fourth assignment of error is sustained in part and overruled in part.

{¶ 50} In sum, the trial court properly concluded that the Stickneys had exercised the option under the Patricia Tullis Trust. Accordingly, the court properly ordered the cotrustees to convey the one-half interest in the Tullis Farm governed by the Patricia Tullis Trust to the Stickneys. However, the trial court erred when it ordered the cotrustees to convey the one-half interest in the Tullis Farm governed by the Nathan Tullis Trust to the Stickneys. That interest should be conveyed to the cotrustees, in equal shares, in accordance with the terms of the Nathan Tullis Trust. We note that nothing in this opinion precludes

Brenda's sisters from separately conveying their respective interests in the Tullis Farm to the Stickneys on terms upon which they might agree.

{¶ 51} The judgment of the trial court is affirmed in part and reversed in part.

Judgment accordingly.

GRADY, P.J., and DONOVAN, J., concur.