OPINION
{¶ 1} Appellant LM of Stark County, Ltd. ("LM") appeals various evidentiary rulings made at trial, in the Stark County Court of Common Pleas, and claims that it is entitled to a new trial in this matter. The following facts give rise to this appeal.
 {¶ 2} On December 1, 1993, LoDano's Footwear, Inc. ("LoDano's) and James Giordano entered into a lease of commercial property, with Alliance Commercial Properties, for the premises located at 2215½ West State Street, in the City of Alliance. Mr. Giordano viewed the available space and negotiated a lease for the property with Ms. Bernice Samblanet. At the time Mr. Giordano entered into the lease, the building was segregated into three sections and did not include interior walls. Mr. Giordano chose to rent the middle section of the building which consisted of four rooms with access to the delivery dock.
 {¶ 3} The lease agreement provided that LoDano's would occupy an area of the building comprising approximately 2,400 square feet. Although LoDano's initially wanted exclusive use of the loading dock area, after discussions with Alliance Commercial Properties, it remained common area. In December 1997, LM purchased the building. Ms. Marilyn Schopp, owner of LM, toured the property and knew that a lease existed between LoDano's and Alliance Commercial Properties. Ms. Schopp assumed the lease as it existed on that date. Shortly after the purchase of the property, LM demanded that LoDano's vacate the loading dock area because by using that area, LoDano's exceeded the approximately 2,400 square feet it was permitted to use pursuant to the terms of the lease agreement. LoDano's agreed to relinquish use of the loading dock area.
 {¶ 4} Subsequently, LM determined that LoDano's use of space continued to exceed the approximately 2,400 square feet agreed to in the lease agreement. Therefore, LM asked LoDano's to relinquish more space, which would include the use of rooms that had been occupied since the commencement of the lease agreement in 1993. In the alternative, LM requested that LoDano's pay additional moneys for leasing the space or enter into a new lease agreement. LoDano's declined LM's request.
 {¶ 5} On September 29, 2004, LM filed a lawsuit against LoDano's alleging breach of the lease agreement, unjust enrichment and nuisance. LM's nuisance claim was the result of allegations that employees of LoDano's continued to smoke, in the building, after LM converted it to a non-smoking facility in January 2001. LoDano's filed counterclaims. This matter proceeded to a jury trial on March 2, 2006. Following deliberations, the jury returned a verdict in favor of LoDano's on all counts. LM timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF BY ADMITTING HEARSAY TESTIMONY INTO EVIDENCE.
 {¶ 7} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF BY ADMITTING TESTIMONY THAT WAS INADMISSIBLE UNDER THE STATUTE OF FRAUDS AND PAROLE EVIDENCE RULE.
 {¶ 8} "III. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT ANY AMBIGUOUS TERMS IN THE LEASE AGREEMENT SHOULD BE CONSTRUED AGAINST PLAINTIFF.
 {¶ 9} "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF BY GRANTING A DIRECTED VERDICT ON AN ELEMENT OF PLAINTIFF'S DAMAGES.
 {¶ 10} "V. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF BY EXCLUDING EVIDENCE RELEVANT TO A WITNESSE'S (SIC) CREDIBILITY.
 {¶ 11} "VI. THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS PREVENTED PLAINTIFF FROM HAVING A FAIR TRIAL."
 I {¶ 12} In its First Assignment of Error, LM maintains the trial court erred by admitting hearsay testimony into evidence. We disagree.
 {¶ 13} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} In the case sub judice, appellant challenges the following testimony of Ms. Samblanet as inadmissible hearsay:
 {¶ 15} "Q. Okay. Did you as the person who was managing the property or entering into the lease for Alliance Commercial Properties or your bosses ever have any problems about which you are aware with the amount of space being used by LoDano's?
 {¶ 16} "A. No, because as a matter of fact, we had a problem over it; and I didn't want it to be just me that said it was okay. It was still over again the loading dock, and Mr. Giordano wanted to make sure absolutely that he could get his stock in. So he did come to our offices, met with two of the officers and myself; and what you see here as the rooms and access to loading dock is what in fact they all agreed on.
 {¶ 17} "Q. Thank you. And it is your position today, I take it, that you and Mr. Giordano reached a verbal agreement separate and apart from this lease; correct?
 {¶ 18} "A. Not just he and I, no.
 {¶ 19} "Q. He, you, and your bosses?
 {¶ 20} "A. Yes.
 {¶ 21} "Q. And it is a verbal agreement as opposed to anything in writing, correct?
 {¶ 22} "A. Yes.
 {¶ 23} "Q. And what you have told this jury is that the verbal agreement outside of what the lease says is that Mr. Giordano was to occupy certain rooms as opposed to approximately 2400 square feet, right?
 {¶ 24} "A. Yes.
 " * * * {¶ 25} "Q. Would you please go back to Page 40, ma'am, at Line 22, I asked you, `Was there any other agreement reached during that meeting or any subsequent meeting where you, Mr. Jaros, Mr. Hayden, Mr. Witte agreed to allow Mr. Giordano to occupy any space beyond what was identified in Plaintiff's Exhibit No. 1, the lease?' And your answer was, `I don't know.' Correct?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. Yet today you are coming in here to this jury and telling them that you know of such an agreement, correct?
 {¶ 28} "A. That I know what the agreement was?
 {¶ 29} "Q. Yeah.
 {¶ 30} "A. Well, they told me when they came out.
 {¶ 31} "Q. Ma'am, why would you tell me that you didn't know a month ago and now today you know? That's all I want to try to figure out.
 {¶ 32} "A. I wasn't in the meeting. I understood your question to be did they agree upon it in front of me.
 {¶ 33} "Q. Okay. You weren't present when there was the agreement?
 {¶ 34} "A. Not at the end of it, no.
 " * * * {¶ 35} "Q. * * * And you are not able to tell us which owner or owners of your employer gave you the authority to change Mr. Giordano's written lease, are you?
 {¶ 36} "A. I didn't change it.
 {¶ 37} "Q. You said you had a verbal modification to it?
 {¶ 38} "A. I did not say I had a verbal modification. I said they agreed verbally with Mr. Giordano. I was not in there for the end of that conversation; and when they came out, they told me what they agreed on.
 " * * * {¶ 39} "Q. Okay. Yet today you are coming in to this jury and telling them in the middle of this trial that you recall standing outside and being there when these owners came out and told you it's okay to change this lease?
 {¶ 40} "A. I did not say I was standing outside anywhere.
 {¶ 41} "Q. Well, today you do know; is that fair?
 {¶ 42} "A. Today I do know?
 {¶ 43} "Q. Yeah.
 {¶ 44} "A. I know what they told me when they came out. * * *. Tr. Vol. II at 426, 446-447, 451-452, 454, 455-456.
 {¶ 45} LM's counsel objected to Ms. Samblanet's testimony and stated as follows:
 {¶ 46} "MR. KABAT: There has been no foundation laid as to whether she had authority to enter into any agreement. As a matter of fact, she will testify she didn't have authority. Any agreement had to come from the owners. None of the owners are going to testify in this case, neither is apparently Mr. Giordano; and that is hearsay." Tr. Vol II at 427.
 {¶ 47} The trial court overruled counsel's objection and stated:
 {¶ 48} "THE COURT: She is an employee of the original lessor, your client. So she is again an employee of hers in essence. So I disagree with your analysis. Tr. Vol. II at 427.
 {¶ 49} LM maintains that because Ms. Samblanet's testimony regarding square footage was based solely on what her bosses told her, it was inadmissible hearsay. Evid.R. 801(C) defines "hearsay" as "* * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In support of this argument, LM cites the case of Trend I Homes, Inc. v.DeBoard (Oct. 31, 1989), Franklin App. No. 89AP-280.
 {¶ 50} In the Trend I Homes case, plaintiff entered into an oral agreement whereby defendant agreed to construct a wooden deck on the home being built by plaintiff. Id. at 1. Approximately one week later, plaintiff contacted the lumber supply company from whom defendant had ordered the deck materials and cancelled defendant's order because an employee of the lumber company told plaintiff that the company was unable to supply all the materials. Id. Plaintiff hired another company to construct the deck. Id. Thereafter, plaintiff filed suit against defendant for $3,964.00, the cost of the deck materials. Id. Following a bench trial, the court determined plaintiff was entitled to a refund of $3,964.00 less the value of the work defendant had already performed in building the deck. Id. at 2.
 {¶ 51} On appeal, defendant argued the trial court admitted improper hearsay into evidence when it allowed plaintiff to testify that he cancelled the lumber order from the lumber company after learning that the lumber company did not have all the lumber available. Id. The alleged hearsay statements consisted of plaintiff's testimony that he was told by an employee of the lumber company of the unavailability of the materials. Id.
 {¶ 52} The Tenth District Court of Appeals determined the challenged statement was hearsay and in doing so, stated as follows:
 {¶ 53} "Fletcher's [plaintiff's] testimony was offered to prove that plaintiff was justified in rescinding the contract. Assuming that Furrow's [lumber company's] inability to furnish some of the materials could provide plaintiff with a valid reason for rescission, the truth of the alleged information imparted by the Furrow's [lumber company's] employee is essential to a determination of whether plaintiff was justified in canceling the order. In other words, the statement was offered to prove that the deck materials were unavailable; thus, the truth of the statement is integral to plaintiff's case. Inasmuch as the statement was made by someone other than the declarant * * * while testifying at trial and was introduced to prove the truth of the matter asserted, the statement constituted hearsay." Id. at 3.
 {¶ 54} LM argues the facts of the case sub judice are similar to those considered in Trend I Homes because Ms. Samblanet's testimony regarding the amount of space LoDano's was permitted to use was based solely on what her bosses told her following a meeting with Mr. Giordano. Accordingly, LM concludes that because Ms. Samblanet was not present for these conversations and has no personal knowledge concerning these conversations, Ms. Samblanet's testimony should have been excluded as inadmissible hearsay.
 {¶ 55} Based upon our review of the record in this matter, we find the trial court correctly overruled LM's challenge concerning Ms. Samblanet's authority to enter into a lease agreement. Ms. Samblanet was, in essence, an employee of Ms. Schopp and therefore, could testify about her scope of authority to enter into agreements. Further, we find the Trend I Homes
case distinguishable because the present case does not concern statements made by someone other than Ms. Samblanet. Rather, Ms. Samblanet's testimony concerns the scope of her authority to enter into lease agreements and how a dispute was resolved concerning Mr. Giordano's use of the loading dock.
 {¶ 56} Accordingly, we find the trial court did not abuse its discretion by admitting this testimony into evidence.
 {¶ 57} LM's First Assignment of Error is overruled.
 II {¶ 58} In its Second Assignment of Error, LM contends the trial court erred by admitting testimony that was inadmissible under the statute of frauds and parol evidence rule. We disagree.
 {¶ 59} State of Frauds
 {¶ 60} LM specifically challenges the testimony of Ms. Samblanet wherein she testified that her bosses entered into a separate verbal agreement with Mr. Giordano that the lease agreement was for a certain number of rooms as opposed to approximately 2,400 square feet. Tr. Vol. II at 426, 446-447. LM claims this testimony violated R.C. 1335.04, which provides as follows:
 {¶ 61} "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."
 {¶ 62} Further, R.C. 1335.05 provides that:
 {¶ 63} "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 64} "The statute of frauds is essentially an evidentiary rule the purpose of which is to protect the integrity of certain enumerated contractual transactions. The statute requires that these transactions be in writing or accompanied by a memorandum witnessing the transaction." [Citation omitted.] Stickney v.Tullis-Vermillion, 165 Ohio App.3d 480, 2006-Ohio-842, ¶ 22. If a contract falling under the statute of frauds is not properly memorialized in a signed writing, the effect of the statute is to render an otherwise valid contract unenforceable. Id. at ¶ 23.
 {¶ 65} We do not find Ms. Samblanet's testimony concerning the number of rooms rented as opposed to approximate square footage violated the statue of frauds. Specifically, in theStickney case, the Second District Court of Appeals explained:
 {¶ 66} "A writing that satisfies the Statute of Frauds need not express the totality of the agreement between the parties. Rather, the writing need only evidence that the parties reached an agreement. * * * A writing is not sufficient to fulfill the Statute of Frauds `unless it contains the essential terms of the agreement expressed with such clearness and certainty that they may be understood from the memorandum itself or some other writing to which it refers.' * * * In the realm of real estate transactions, a memorandum of an oral agreement satisfies the Statute of Frauds if it (1) identifies the subject matter of the transaction, (2) establishes that a contract has been reached, and (3) states the essential terms of the agreement. * * * If the writing does not contain words which can reasonably be construed as words of promise or agreement, the writing is not a memorandum for purposes of the Statute of Frauds." Id. at ¶ 24, citing Lacyv. Adair (Nov. 22, 1989), Greene App. No. 89 CA 0018.
 {¶ 67} Accordingly, in the case sub judice, the lease agreement establishes that the parties reached an agreement. The lease agreement identified the property and stated the essential terms of the agreement. The trial court properly admitted Ms. Samblanet's testimony under the statute of frauds because it merely clarified an ambiguous term that was contained in the lease agreement (i.e. the number of rooms leased to Mr. Giordano under the "approximately 2,400 square foot language.") Therefore, Ms. Samblanet's testimony did not add a term to the lease agreement that was not considered by the parties and included in the lease agreement at the time the parties entered into the agreement in 1993. The trial court did not abuse its discretion when it admitted this testimony.
 {¶ 68} Parol Evidence Rule
 {¶ 69} LM also maintains Ms. Samblanet's testimony regarding the number of rooms LoDano's was permitted to occupy under the lease agreement was inadmissible under the parol evidence rule. LM argues that because the parties failed to document the "room agreement" in the written lease and instead, created a separate, contemporaneous agreement on the issue, the parol evidence rule precluded LoDano's from asserting that argument at trial.
 {¶ 70} "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. * * * Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. * * * When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Shifrin v.Forest Enterprises, Inc., 64 Ohio St.3d 635, 638, 1992-Ohio-28.
 {¶ 71} In the Shifrin decision, the Ohio Supreme Court referenced an earlier opinion, Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, wherein it set forth a test for determining whether contract terms are ambiguous. This test provides as follows: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."Alexander at paragraph two of the syllabus. Thus, if no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity. Shifrin at 638.
 {¶ 72} In the matter currently under consideration, an ambiguity existed concerning the phrase "approximately 2,400 square feet." Because of this ambiguity, the trial court did not abuse its discretion when it permitted Ms. Samblanet to define this language by referring to the number of rooms Mr. Giordano was leasing for use by LoDano's.
 {¶ 73} LM's Second Assignment of Error is overruled.
 III {¶ 74} In its Third Assignment of Error, LM maintains the trial court erred by instructing the jury that any ambiguous terms, in the lease agreement, should be construed against LM. We disagree.
 {¶ 75} The trial court instructed the jury as follows concerning ambiguous terms in the contract:
 {¶ 76} "If you find that the contract was ambiguous with regard to the amount of square footage to be rented, you are instructed that any such ambiguity must be strictly construed against the drafter of the contract and/or its successor in interest.
 {¶ 77} "Accordingly, if you find that the terms of the contract are ambiguous, you are instructed to construe any ambiguity against the drafter of the contract and/or its successor in interest." Tr. Vol. II at 629.
 {¶ 78} Counsel for LM objected to the jury instruction stating that, "[i]t is our belief that there has been no testimony presented on who drafted this agreement, the terms that will be construed against us, or who finalized the agreement that makes up the Plaintiff's breach of contract case. So I think it is improper to give the jury an instruction when there has been no evidence presented on this issue. * * *." Tr. Vol. II at 570.
 {¶ 79} In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and "`* * * must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" Kokita v. Ford Motor Co. (1995), 73 Ohio St.3d 89,93, quoting Becker v. Lake Cty. Mem. Hosp. W. (1990),53 Ohio St.3d 202, 208.
 {¶ 80} LM objected to the jury instruction on the basis that there was no evidence presented concerning who drafted the lease agreement. On appeal, LM challenges the jury instruction on the basis that it is an incorrect statement of the law because there is no legal support for the proposition that an ambiguous contract term should be construed against the successor in interest of the drafter. We will address LM's assignment of error as it relates to the basis for its objection at trial.
 {¶ 81} We find the record in this matter contains testimony that Alliance Commercial Properties drafted the lease agreement. Specifically, Ms. Samblanet testified as follows, on direct examination, concerning the lease agreement:
 {¶ 82} "Q. See that notebook in front of you? Would you take a look at the document that has been marked as Plaintiff's Exhibit 1, should be under Tab No. 1 in there. Do you recognize that document?
 {¶ 83} "A. It is what I used at the time for commercial lease, I just — yes, I do.
 {¶ 84} "Q. What is that?
 {¶ 85} "A. That is the lease that we used on commercial properties.
 {¶ 86} "Q. Do you recall using that lease form when you coordinated the lease of the property to LoDano's Footwear and Mr. Giordano?
 {¶ 87} "A. Without actually reading it word for word, yes. It was our standard, I don't know why we would have changed, you know. Tr. Vol. II at 417-418.
 {¶ 88} Ms. Samblanet's testimony clearly establishes that Alliance Commercial Properties used its standard lease agreement when it leased the property in question to Mr. Giordano. Subsequently, LM assumed the lease agreement when it purchased the building. "The general rule of statutory interpretation for contracts is that ambiguities must be construed against the drafter of the agreement." Holderman v. Huntington Leasing Co.
(1984), 19 Ohio App.3d 132, 134, citing Monnett v. Monnett
(1888), 46 Ohio St. 30, 34-35. Further, in Inter Ins. Exchangeof Chicago Motor Club v. Wagstaff (1945), 144 Ohio St. 457, 460, the Ohio Supreme Court recognized the general rule that "an assignee * * * of a claim stands in the shoes of the assignor * * * and succeeds to all the rights and remedies of the latter." (Emphasis sic.)
 {¶ 89} Therefore, LM, as assignee of the lease agreement between Mr. Giordano and Alliance Commercial Properties, assumed the agreement as written, including the ambiguous language regarding the amount of space to be leased to Mr. Giordano. Also, the trial court correctly instructed the jury that any ambiguity in the lease agreement must be construed against LM since the record establishes that LM's predecessor in interest drafted the lease agreement at issue. Accordingly, we find the jury instruction given by the trial court did not mislead the jury in a manner materially affecting LM's substantial rights.
 {¶ 90} LM's Third Assignment of Error is overruled.
 IV {¶ 91} L M contends, in its Fourth Assignment of Error, the trial court erred to its prejudice by granting a directed verdict on an element of its damages. We disagree.
 {¶ 92} The standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Brown v. Guarantee Title Trust/Arta (Aug. 28, 1996), Fairfield App. No. 94-41, at 3, citing Sanek v. DuracoteCorp. (1989), 43 Ohio St .3d 169, 172. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment.Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6,13.
 {¶ 93} In the case sub judice, at the close of LoDano's case, counsel for LoDano's moved for a directed verdict on LM's nuisance claim. Counsel for LoDano's argued, in support of the motion, that LM had not established any damages as a result of the nuisance. Tr. Vol. II at 563-564. Specifically, counsel for LoDano's argued that the testimony of Lori Conny, the owner of a neighboring business, did not satisfy LM's burden on damages because she was not an employee of LM, but a separate tenant. Id. at 563. In granting LoDano's motion for directed verdict, the trial court stated:
 {¶ 94} "* * * Although the Court believes the evidence is somewhat slim on the harm caused, the Court is going to grant the motion for directed verdict only in part as to any claims that might be related to Miss Conny and her business of Icon.
 {¶ 95} "She has her own independent cause of action that she could have brought. She did not bring it. This suit is brought in behalf of LM only, so it applies only as to any damages, whatever they may be, that LM may have sustained relative to this issue."
 {¶ 96} "It is a nuisance issue. If Miss Conny would have wanted to bring an issue on behalf of Icon, she could have. Id. at 566-567.
 {¶ 97} LM argues the trial court erred when it granted LoDano's motion for directed verdict because it never sought damages for the way the smoking affected Ms. Conny. Rather, LM argues Ms. Conny's testimony was relevant to and demonstrative of the annoyance and inconvenience LM experienced as a result of the employees of LoDano's continuing to smoke.
 {¶ 98} We find the trial court properly granted LoDano's motion for directed verdict. The testimony presented by Ms. Conny was relevant to what she and her employees had experienced. Their testimony did not explain what the employees of LM experienced. Since LM filed the nuisance claim, the only relevant testimony concerned what the employees of LM experienced as a result of the continued smoking by LoDano's employees.
 {¶ 99} LM's Fourth Assignment of Error is overruled.
 V {¶ 100} In its Fifth Assignment of Error, LM maintains the trial court erred to its prejudice when it excluded evidence relevant to Ms. Samblanet's credibility. We disagree.
 {¶ 101} As in the First Assignment of Error, we will review this assignment of error under an abuse of discretion standard. LM maintains on appeal that the trial court should have permitted it to cross-examine Ms. Samblanet regarding her character for truthfulness or untruthfulness because Ms. Samblanet opened the door to her character when she testified that her bosses were honest men. Tr. Vol. II at 459. LM sought to introduce evidence that her bosses had previously accused her of exceeding her authority and committing a crime of dishonesty.
 {¶ 102} In support of this argument, LM relies upon Evid.R. 608(B), which provides, in pertinent part, as follows:
 {¶ 103} "(B) Specific instances of conduct
 {¶ 104} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. * * *"
 {¶ 105} The trial court did not abuse its discretion when it refused to permit LM to introduce this evidence. Ms. Samblanet's testimony concerning the honesty of her bosses did not open the door, under Evid.R. 608(B), thereby permitting counsel for LM to question her about her own honesty.
 {¶ 106} LM's Fifth Assignment of Error is overruled.
 VI {¶ 107} In its Sixth Assignment of Error, LM contends the cumulative effect of the trial court's errors prevented it from having a fair trial. We disagree.
 {¶ 108} In State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in State v. Bethel,110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197, it is simply not enough to intone the phrase "cumulative error." Because LM offers no further analysis and we have overruled appellant's First, Second, Third, Fourth and Fifth Assignments of Error, we conclude LM's argument lacks substance.
 {¶ 109} LM's Sixth Assignment of Error is overruled.
 {¶ 110} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, P.J. Gwin, J., concur.
Hoffman, J., concurs separately.