**IRETON et al.,**

v.

**JTD REALTY INVESTMENTS, L.L.C., et al.**

2010-Ohio-6692.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2008 CVH 0488.

Decided March 8, 2010.

2

4

6

David C. DiMuzio, Inc., and David C. DiMuzio, for plaintiffs.

Graydon, Head & Ritchey, L.L.P., Scott K. Jones, and Robin D. Ryan, for defendant Katherine's Ridge Development, L.L.C.

Reminger Co., L.P.A., and Rick L. Weil, for third-party defendants John Korfhagen and the Law Office of John C. Korfhagen, Inc.

Gottesman & Associates and Zachary Gottesman, for defendants JTD Realty Investments, L.L.C., and James Arnold.

VICTOR M. HADDAD, Judge.

{¶ 1} This matter came before the court on August 6, 2009, pursuant to the following: a motion to strike filed by the plaintiffs; a motion to strike filed by the defendant Katherine's Ridge Development, L.L.C. ("Katherine's Ridge"), a mo-

tion for summary judgment filed by the plaintiffs, a motion for summary judgment filed by defendant Katherine's Ridge; a motion for summary judgment filed by defendants JTD Realty Investment, L.L.C. ("JTD") and James Arnold, and a motion for summary judgment filed by third-party defendants John Korfhagen and the Law Office of John C. Korfhagen, Inc. (collectively, "Korfhagen"). Attorney David DiMuzio represented the plaintiffs, Archie Ireton and Lois Ireton. Attorneys Scott Jones and Robin Ryan represented Katherine's Ridge. Attorney James Arnold represented himself and JTD in the absence of attorney Zachary Gottesman. Attorney Rick Weil represented the third-party defendants John Korfhagen and the Law Office of John C. Korfhagen, Inc.

{¶ 2} The court heard oral arguments on the plaintiffs' motion to strike on August 6, 2009. The parties stipulated in court and by entry, filed August 18, 2009, that all motions for summary judgment would be submitted on their briefs. Further, since the motions for summary judgment relate to liability only, Katherine's Ridge has withdrawn its motion to strike the affidavit of Stephen Hood. It is agreed that the affidavit may be used by the court to determine the existence of damages but not the amount. It was further agreed that regardless of the court's determination on the plaintiffs' motion to strike, there would be no supplements filed in regard to the motions for summary judgment so that the court can rule on all motions in one decision. Finally, the motion to compel, filed by the plaintiff on July 21, 2009, will remain pending until the foregoing motions have been decided. The court has granted the plaintiffs leave to file their final response to that motion, if necessary, after the motions for summary judgment are decided.

{¶ 3} Upon hearing arguments on the motion to strike, the court took that motion, as well as all motions for summary judgment, under advisement, and now renders the following decision.

## FINDINGS OF FACT

{¶ 4} This case arises from a real estate purchase contract between Archie and Lois Ireton and JTD. The Iretons were the sellers and JTD was the buyer of real property located at 1565 Clermontville Laurel Road, Cincinnati, Ohio. JTD then assigned its rights under that contract to Katherine's Ridge; therefore, Katherine's Ridge is now the owner of that property. Attorney James Arnold and his firm provided legal services to both JTD and Katherine's Ridge in relation to the purchase contract. Attorney John C. Korfhagen and his law firm provided legal services to the Iretons at or around the time that the purchase contract was executed. Korfhagen did not provide legal services to JTD, Katherine's Ridge, or James Arnold. James Arnold did not provide legal services to Korfhagen or to the Iretons.

{¶ 5} The purchase contract was executed on or about August 23, 2005, for $600,000. The contract also gave JTD, and Katherine's Ridge as a result of the assignment, the right of first refusal for what is called the Barkley Road properties. If the plaintiffs were to receive a good-faith offer from a third party for the Barkley Road properties, then the plaintiffs were to notify JTD by certified mail, return receipt requested, of the offer and JTD would then have 14 days after receiving notice to exercise the right of first refusal.

{¶ 6} On or about November 7, 2005, Ron Singleton made an offer to purchase the Barkley Road properties for $800,000. Korfhagen sent notice of this offer to JTD's and Katherine's Ridge's attorney, Arnold, on December 16, 2005, by certified mail. This notice was received by Arnold on December 19, 2005.[1] Arnold then sent a letter to Korfhagen by facsimile on January 3, 2006, on behalf of JTD indicating an intent to purchase the Iretons' Barkley Road properties for $800,000.

{¶ 7} The Iretons allege that JTD then backed out of the January 3, 2006 agreement to purchase the Barkley Road properties and thus they began searching for other buyers. When they received another offer, Korfhagen would inform Arnold of the offer and give him an opportunity to respond. The Iretons assert that JTD, through Arnold, received the letters and was intentionally ignoring them in an attempt to "sabotage the sale of the Barkley Road properties by disputing the form of notice used by Korfhagen in his April 12, 2006 letter to Arnold."[2] Because they feared litigation, the Iretons did not go through with the sale of the property to the third party. It was not until January 2007 that the Iretons closed on the Barkley Road properties, which they allege cost them the benefit of a 1031 tax-free exchange, carrying costs, and the cost associated with the buyer's financing.

{¶ 8} This lawsuit was initiated on February 29, 2008, and an amended complaint was filed on March 21, 2008. The plaintiffs allege in their amended complaint against JTD and Katherine's Ridge the following: (1) breach of contract and (2) breach of duty of good faith and fair dealing. They allege tortious interference with a contract against defendant Arnold. A separate lawsuit, in case No. 2008 CVA 0974, was filed against attorney Korfhagen and his law firm. The allegations in that case centered on Korfhagen giving improper notice to the defendants when he sent the April 12 letter by facsimile rather than certified mail, return receipt requested. The Iretons and Korfhagen entered into a confidential settlement agreement in that case, resulting in its dismissal.

1. The plaintiffs assert in their amended complaint that Arnold received notice on December 19, 2006; however, all the evidence indicates that he received notice on December 19, 2005.

2. Amended Complaint, filed March 21, 2008, at ¶ 21.

Katherine's Ridge filed a third-party complaint against Korfhagen in the current case seeking contribution for any damages awarded to the Iretons.

## THE LEGAL STANDARD

{¶ 9} In considering a motion for summary judgment, the court should review the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C). Summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. See also *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Harless* at 66; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, at ¶ 18. The moving party must specifically point to evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. *Dresher* at 293.

{¶ 10} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. "Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party." *Parmore Group v. G & V Invests., Ltd.,* Franklin App. Nos. 05AP–756 and 06AP–1106, 2006-Ohio-6986, 2006 WL 3825259, ¶ 10. See also *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

## LEGAL ANALYSIS

### PLAINTIFF'S MOTION TO STRIKE

{¶ 11} Before determining the motions for summary judgment, the court must first determine whether Exhibit 20 and Exhibit 22 to the deposition of Archie

Ireton and the testimony elicited as a result thereof must be stricken from the record. The plaintiffs argue that these portions of the deposition must be stricken for two reasons. First, they argue that Ireton did not authenticate the depositions prior to their use. Their second argument is that the exhibits contain inadmissible hearsay and should be stricken as a result.

{¶ 12} The defendant, Katherine's Ridge, argues that Ireton authenticated the exhibits during his deposition. The defendant contends that Evid.R. 901(A) and (B)(1) permit Ireton to authenticate the exhibits in question, since he is a witness who has knowledge of those documents. They argue that Ireton testified that he was copied on Exhibit 20 and that he received a copy of Exhibit 22. The defendant also argues that the letters and statements contained therein are not hearsay, because they constitute admissions by a party-opponent or a representative of a party-opponent, pursuant to Evid.R. 801(D)(2). Finally, the defendant argues that the plaintiffs have waived their ability to object to the use of the exhibits and testimony in question because they did not object at the time that the deposition was taken.

{¶ 13} "A trial court may only consider evidence properly submitted with a motion for summary judgment, if the evidence is admissible at trial." *McPherson v. Goodyear Tire Ruber [sic] Co.*, Summit App. No. 21499, 2003-Ohio-7190, 2003 WL 23094976, ¶ 7. In Ohio, the trial court is granted discretion in determining whether to admit or exclude evidence. Id., citing *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

{¶ 14} Civ.R. 32 governs the use of depositions in court proceedings. That rule provides: "Subject to the provisions of subdivision (D)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Civ.R. 32(B). In other words, the plaintiffs had the right to object to the use of the exhibits and testimony elicited as a result of those exhibits at the hearing on August 6, 2009, unless Civ.R. 32(D)(3) applies.

{¶ 15} That subdivision of the rule provides that "[e]rrors and irregularities occurring at the oral examination * * * in the form of the questions or answers, * * * and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless reasonable objection thereto is made at the taking of the deposition." Civ.R. 32(D)(3)(b). "From this language, it can be gleaned that an objection to the form of a question posed during the taking of a videotaped deposition must be made at that time in order to preserve the objection for review." *Bruce v. Gentry* (Aug. 5, 1991), Butler App. No.

CA89–10–147, 1991 WL 149556, at *4. While this is not a videotaped deposition as in *Bruce v. Gentry,* the court finds that the rule is not specific as to the type of deposition and applies equally to all depositions used during a court proceeding.

{¶ 16} In this case, the plaintiffs are objecting to the defendant's questioning of the plaintiff, Archie Ireton. Specifically, they object to the questions and answers involving Exhibits 20 and 22 because the defendant failed to ask questions that would provide a proper foundation for the admission of those exhibits. The defendant asserts that since the plaintiffs are now objecting to the form of the questions during the defendant's attempt to lay a foundation for the admission of those exhibits, the objection must be made at the time of the deposition in order to preserve those objections for a later date. The court finds that due to the plaintiffs' failure to object to the form of those questions at the taking of the deposition, and pursuant to Civ.R. 32(D)(3)(b), the omission waived any error regarding the questions.

{¶ 17} Further, even if the court were to find that the plaintiffs' failure to object for lack of proper authentication was not an objection to the form of the question, the court finds that the foregoing is an error that could have been obviated, removed, or cured if it had been promptly presented at the time of the taking of the deposition; thus, the defendant's attorney could have asked the appropriate questions in order to properly authenticate the documents at the time of the deposition. Therefore, the court finds that due to the plaintiffs' failure to object to those questions at the taking of the deposition, and pursuant to Civ.R. 32(D)(3)(b), the omission waived any error regarding the questions.

{¶ 18} For both of the foregoing reasons, the court finds that any error regarding the failure to lay a proper foundation, if it existed, was waived when the plaintiffs' counsel failed to object. Consequently, the court hereby denies the plaintiffs' motion to strike in its entirety.

{¶ 19} The plaintiffs assert that the evidence indicates that Arnold never received the letters in question. However, the fact that they were never received does not mean that they were never sent, as the plaintiffs would urge this court to believe. Further, when asked by DiMuzio if Korfhagen signed the letters and delivered them to Arnold, Ireton responds, "yes, he signed them."[3] DiMuzio argued at the oral hearing that this is not what Ireton meant and that he could explain what was intended but that it was privileged. However, DiMuzio is not the deponent and cannot testify as to what the deponent actually meant to say. Further, Ireton was advised that if he answered a question, it would be assumed

---

3. Deposition of Archie Ireton, filed July 13, 2009, 160.

that he understood it.[4] Therefore, the court finds that if DiMuzio wished to clarify Ireton's response, he could have asked follow-up questions about what Ireton intended by his response.

*MOTIONS FOR SUMMARY JUDGMENT OF*
*THE PLAINTIFFS AND OF DEFENDANTS*
*JTD AND KATHERINE'S RIDGE*

{¶ 20} Since the plaintiffs and the defendants, Katherine's Ridge and JTD, have filed competing motions for summary judgment on the same issues in this case, the court will address those motions simultaneously. The plaintiffs assert a breach-of-contract claim and a claim of breach of duty of good faith and fair dealing against the defendants, JTD and Katherine's Ridge. Therefore, the court will address these claims in the order they were presented in the amended complaint.

{¶ 21} **Count 1—Breach of Contract.** The plaintiffs allege in their complaint that Korfhagen sent a letter on December 19, 2005, to JTD, by certified mail, that constituted an offer to purchase the Barkley Road properties for $800,000 minus the cutouts for the house, barn, and five acres. The offer was to be according to the terms of the November 7, 2005 offer to purchase submitted by Ron Singleton. The plaintiffs further allege that JTD and its assignee, Katherine's Ridge, through attorney Arnold, accepted the offer on January 3, 2006. They then assert that the defendants breached their contract with the Iretons by repudiating the terms of the contract and refusing to sign the purchase contract containing those terms.[5]

{¶ 22} In the plaintiffs' motion for summary judgment, they argue that it is undisputed that the August 23, 2005 agreement, which included the right of first refusal, was in writing. Further, they assert that it is undisputed that the notice was given on December 16, 2005, and accepted by JTD's and Katherine's Ridge's attorney, as agent for defendants, on January 3, 2006. It is their contention that it is undisputed that the parties breached that agreement and tried to enforce a different deal, thus breaching the contract.

{¶ 23} The defendants assert in their motion for summary judgment, however, that no contract was formed, as there was no meeting of the minds sufficient to form a contract between the parties. They further assert that even if there was a contract formed, it violated the statute of frauds and was thus void.

---

4. Id., 12.

5. Amended Complaint, filed March 21, 2008, count one, 28–30.

{¶ 24} Ohio's statute of frauds provides: "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05. The purpose of the statute of frauds is "to prevent misunderstandings regarding the sale of land, especially given the uniqueness of real property. To this end, the statute is satisfied only where there is a writing sufficient to evidence that an agreement has been reached concerning the sale of real property." *Ridge Stone Builders Developers, Ltd. v. Gribbin,* Wood App. No. WD–03–009, 2003-Ohio-5188, 2003 WL 22233562, ¶ 23, quoting *Auken v. Kellan Properties* (Sept. 30, 1996), Erie App. No. E–95–037, 1996 WL 549212. "By requiring that contracts concerning real estate be evidenced by a signed writing, the statute of frauds ' "serves to ensure that transactions involving realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interest and discourages indefinite or fraudulent claims about such interests." * * * If a contract falling under the statute of frauds is not properly memorialized in a signed writing, the effect of the statute is to render an otherwise valid contract unenforceable.' " *Stickney v. Tullis–Vermillion,* 165 Ohio App.3d 480, 2006-Ohio-842, 847 N.E.2d 29, ¶ 23, quoting *Beaverpark Assocs. v. Larry Stein Realty Co.* (Aug. 30, 1995), Montgomery App. No. 14950, 1995 WL 516469, quoting *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 16 OBR 391, 476 N.E.2d 388.

{¶ 25} To satisfy the statute of frauds, the writing need not contain the totality of the agreement, but must only evidence that an agreement was reached. *Stickney* at ¶ 24. The writing must contain the essential terms of the agreement, and the terms must be expressed with clearness and certainty so that they may be understood from the memorandum itself or a writing to which the memorandum refers. Id. The memorandum must (1) identify the subject matter of the transaction, (2) establish that a contract has been reached, and (3) state the essential terms of that agreement. Id. " 'If the writing does not contain words which can reasonably be construed as words of promise or agreement, the writing is not a memorandum for purposes of the Statute of Frauds.' " Id., quoting *Lacy v. Adair* (Nov. 22, 1989), Greene App. No. 89 CA 0018, 1989 WL 150809.

{¶ 26} " ' "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of

consideration." ' " *Ridge Stone* at ¶ 24, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. Additionally, "a meeting of the minds to the essential terms of the contract is a requirement to enforcing the contract." Id.

{¶ 27} To succeed on a breach-of-contract claim, all of the following elements must be proven: (1) that a binding contract or agreement exists, (2) that the asserting party performed their contractual obligations, (3) that the party against whom the claim is asserted failed to fulfill its contractual obligations without legal excuse, and (4) that the asserting party suffered damages as a result. *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108, 661 N.E.2d 218. Thus, before the court addresses the defendants' statute-of-frauds argument, and any other arguments asserted by the defendants, the court must first determine whether an enforceable contract existed in order that the first element of breach may be satisfied. A contract is not formed unless the essential elements of a contract previously cited are satisfied. Therefore, the court finds that there must be (1) an offer, (2) an acceptance, (3) contractual capacity, (4) consideration, (5) a manifestation of mutual assent, and (6) legality of object and of consideration. In addition to these elements, there must be a meeting of the minds between the parties in order for the agreement to be enforced. For purposes of this decision, the court will address the offer and acceptance elements together.

{¶ 28} The first writing that is relevant to the court's determination is the December 16, 2005 letter from Korfhagen to Arnold notifying him of the Singleton offer to purchase the Barkley Road properties.[6] The second writing that is relevant to the court's determination is the January 3, 2006 letter from Arnold to Korfhagen in which he discusses the intent of JTD to purchase the property.[7]

{¶ 29} The plaintiffs assert that the Korfhagen letter serves as an offer and the Arnold letter an acceptance; however, the court finds that the evidence proves otherwise. The text of the Korfhagen letter states that JTD and Katherine's Ridge have 14 days from the receipt of the letter and Singleton's offer to inform the plaintiffs whether they intend to purchase the property. Korfhagen concludes the letter as follows: "If no *offer* to purchase is received by me * * *." This proves that Korfhagen is simply notifying the defendants of the Singleton offer and is asking the defendants to submit their own offer to purchase within 14 days. If no offer to purchase is submitted by the defendants, then the

---

6. Amended Complaint, 28; deposition of Archie Ireton, filed July 13, 2009, Exhibit KRD 13.

7. Amended Complaint, 29, deposition of Archie Ireton, Exhibit KRD 14.

plaintiffs would proceed accordingly, i.e., proceed with the Singleton offer. The court finds, therefore, that the Korfhagen letter does not serve as an offer.

{¶ 30} Arnold then responded on January 3, 2006, several days beyond the 14–day deadline.[8] The court must then determine whether this letter constitutes an offer to purchase that was subsequently accepted by the plaintiffs. According to this letter, the defendants notified the plaintiffs that they intended to purchase the property according to the terms of the Singleton proposal. Arnold further requested a copy of the plats for the property that included the cutout of the house, barn, and remaining acreage for his review. He also asked that Korfhagen put together a contract to purchase that incorporated by reference the terms of the Singleton proposal and, upon executing that contract, the defendants would provide the plaintiffs with the earnest money. The court finds that the language of the Arnold letter, specifically the language insisting that Korfhagen put together a contract to purchase, proves that at this point, no contract existed. The court finds, therefore, that if Arnold's letter is anything, it is an offer to purchase according to the terms of the Singleton offer.

{¶ 31} Now that an offer exists, the court must determine whether there was an acceptance of that offer. On February 8, 2006, Korfhagen sent another letter to Arnold expressing the plaintiffs' desire to reject both the Singleton offer and the defendants' offer.[9] At some point prior to this letter, Singleton apparently made a second offer of $1,050,000.[10] Korfhagen then sent the February 8 letter and attached two proposals for the defendants to review in the event that they wanted to purchase according to the terms in those proposals.[11] Therefore, the court finds that this letter serves as a rejection of the defendants' offer on January 3, 2006, and constitutes two counteroffers by the plaintiffs.

{¶ 32} Arnold then responded on February 14, 2006, and asserted that he was confused as to why the plaintiffs believed that they could refuse to accept the offer made by the defendants pursuant to their right of first refusal.[12] Arnold asserted that "JTD Realty Investments, LLC is not waivering from the position that Mr. Ireton should honor JTD Realty Investment, LLC's offer to match the terms of Singleton's offer, which was presented." This further bolsters the courts previous finding that the January 3 letter from Arnold constituted an offer

---

8.  Deposition of Archie Ireton, Exhibit KRD 14.

9.  Deposition of Archie Ireton, Exhibit KRD 17.

10.  Deposition of Archie Ireton, Exhibit KRD 16.

11.  Deposition of Archie Ireton, Exhibit KRD 17, 18.

12.  Deposition of Archie Ireton, Exhibit KRD 19.

rather than an acceptance. In this letter, Arnold strongly asserted that he believed that the Iretons had a duty under the right of first refusal to accept the defendants' offer. However, notwithstanding that assertion, Arnold requested that any subsequent good-faith offers be submitted to him pursuant to the continuing right of first refusal.

{¶ 33} Korfhagen then responded to this letter by Arnold on February 27, 2006.[13] Korfhagen asserted that while his clients do not believe that they are obligated to accept the offer made by the defendants pursuant to the Singleton proposal, they were prepared to proceed on the defendants' January 3 offer. Korfhagen stated that the contract to purchase signed by the Iretons was included and must be returned to him by March 6, 2006; otherwise, the plaintiffs would assume that the defendants no longer wanted to proceed with the purchase and would enter into the contract with Singleton. The court finds that this letter constituted an acceptance by the Iretons, but it also provided the defendants with an opportunity not to proceed on the original offer by not returning the signed contract. Therefore, the court finds that while an offer and acceptance were finally obtained, neither party was bound to that unless a formal written contract to purchase was signed by both parties. Consequently, the court finds that this letter does not constitute the written agreement required by the statute of frauds, since both parties contemplated throughout that a formal agreement would be drafted before either party would be bound.

{¶ 34} Arnold then responded, outside the March 6 deadline, with a letter on March 7, 2006, in which he made a new offer of $800,000 for the entire property, inclusive of the house, barn, and additional acreage.[14] Since Arnold did not respond by the deadline provided in Korfhagen's February 27 letter, the court finds that he opted not to sign the contract proposed by the Iretons; thus, the Iretons had the right at this point to proceed with the sale to Singleton. Included in the letter to Korfhagen was a new offer that the plaintiffs had the right to either accept or reject.

{¶ 35} Korfhagen responded on March 17, 2006, and essentially rejected the defendants' newest offer by stating that the plaintiffs entered into the contract with Singleton.[15] Subsequent to this, the Iretons received another offer from a different purchaser, Jason Krause.[16] Korfhagen notified Arnold of this on

---

13. Deposition of Archie Ireton, Exhibit KRD 20.

14. Deposition of Archie Ireton, Exhibit KRD 21.

15. Deposition of Archie Ireton, Exhibit KRD 22.

16. Deposition of Archie Ireton, Exhibit KRD 24, 25.

April 12, 2006, and gave Arnold until April 26, 2006, to sign and return the contract should the defendants choose to purchase according to those terms.[17] The defendants did not respond, and the property was eventually sold to Krause.

{¶ 36} Based upon this entire exchange between the attorneys, the court finds that the earliest date upon which an offer and acceptance were achieved was February 27, 2006.[18] However, it is clear from this correspondence that no contract was in place at that time and the defendants were not obligated to follow through on the original offer unless they signed and returned the contract sent to them by the plaintiffs' counsel. Therefore, since no valid and enforceable contract existed, there was nothing for the defendants to breach.

{¶ 37} Further, even assuming that some type of contract was formed between the parties, the court would still have to ensure that the contract satisfied the statute of frauds. The court agrees, and it is not disputed, that the August 23, 2005 purchase agreement for the Clermontville Laurel Road property, which contained the right of first refusal for the Barkley Road properties, was in writing. However, in order for the court to determine that the defendants exercised that right and entered into a valid and enforceable contract for the purchase of the Barkley Road properties, the court must find that the contract for the Barkley Road properties was also in writing.

{¶ 38} The defendants argue that the writings between the parties fail to sufficiently identify the property at issue; thus, they do not satisfy the first requirement of the statute of frauds. However, attached to the December 16, 2005 letter from Korfhagen is the proposed offer to purchase from Ron Singleton. Since Korfhagen refers to that proposal, the court finds that the proposal is incorporated by reference in the letter from Korfhagen. That offer describes the property to be purchased in paragraph 1 as PIN # 222614F062–# 222614F061— 94.488 acres, Clermont County, New Richmond, Ohio, 45157. Further, in paragraph 4, the proposal states that the buyer is purchasing 90 acres of vacant land, but the house and barn and remaining property are to be retained by the seller. The court finds, therefore, that the letter from Korfhagen does include a sufficient description of the property at issue. Thus, the court finds that the writing properly identifies the subject matter of the proposed transaction, thus satisfying the first requirement under the statute of frauds.

{¶ 39} The second requirement for a writing to satisfy the statute of frauds is that the writings establish that a contract has been reached. Based upon the entire exchange between the attorneys, the court finds that the earliest date upon

17. Deposition of Archie Ireton, Exhibit KRD 25.

18. Deposition of Archie Ireton, Exhibit KRD 20.

which an offer and acceptance were achieved was February 27, 2006. However, it is clear from this correspondence that no contract was in place at that time and the defendants were not obligated to follow through on the original offer unless they signed and returned the written contract sent to them by the plaintiffs' counsel. Moreover, going through the entire chain of correspondence, it became evident to the court that the parties never entered into a written agreement for the purchase of the property and the letters cannot serve as a written contract, since all of the letters contemplated that a formal contract would be executed once an agreement was reached. Therefore, the court finds that while there were an offer and acceptance, the writings do not evidence mutual assent as to the specific terms of the agreement. Further, the writings do not evidence a meeting of the minds, as the parties never agreed to the contents of a formal written agreement between them. Since mutual assent and a meeting of the minds are required, the court finds that the defendants have pointed to affirmative proof in the letters that the plaintiffs and the defendants failed to enter into a contract for the purchase of the Barkley Road properties. Further, Ireton testified that there was never a contract signed.[19] Since this issue was raised in the defendants' motion for summary judgment, and the defendants pointed to evidence on the issue of the statute of frauds, the court finds that the burden then shifted to the plaintiffs to point to affirmative evidence indicating a genuine triable issue. Based upon the court's analysis, the court finds that the plaintiffs failed to meet their burden in pointing to evidence creating a genuine triable issue on the second requirement for the statute of frauds.

{¶ 40} Therefore, the court finds that since there was no contract between the parties, there was no contract that the defendants could have breached. Further, the plaintiffs cannot prove, as they have asserted, that the chain of correspondence between Korfhagen and Arnold constituted the written contract under the statute of frauds, as required by *Stickney*. Specifically, the second requirement is that the writings establish that a contract has been reached. The writings in this case actually establish the opposite, i.e., that no formal contract was in place and that the parties intended that the formal contract to purchase be signed before either party was bound.

{¶ 41} Based upon the foregoing analysis, and the competent, credible evidence presented pursuant to Civ.R. 56(C), the court finds that the plaintiffs have failed to point to evidence proving, and that the defendants have successfully pointed to affirmative evidence disproving, that a contract existed between the parties. Further, to the extent that the plaintiffs argued that a contract existed, the court finds that the affirmative evidence before it proves that the contract failed to

---

19. Deposition of Archie Ireton, 101.

comply with the statute of frauds. Therefore, since there was no enforceable contract executed by the plaintiffs and the defendants, the court finds that no genuine issue of material fact exists and that reasonable persons can come to but one conclusion and that conclusion is adverse to the plaintiffs. Consequently, the court finds that based upon the foregoing, the defendants are entitled to judgment as a matter of law on the plaintiffs' breach-of-contract claim.

{¶ 42} The defendants made additional arguments in case the court determined that a contract existed. Since the court has found in favor of the defendants on the breach-of-contract action, the court need not address the remaining arguments by the defendants on that claim.

{¶ 43} Even if the court had excluded Exhibits 20 and 22 from the record, the result would be the same. Arnold responded to the second Singleton offer with a request that the plaintiffs honor the January 3 offer; however, there would have been no response by Korfhagen if the court excluded Exhibit 20, thus Arnold made a new offer in Exhibit 21. That offer was essentially rejected in Exhibit 22, but if the court ignored that exhibit as well, the next correspondence was Exhibit 25 and related to the Krause offer. Either way, the parties never memorialized the January 3 offer in a formal written contract as contemplated by the parties. Further, there would have never been an acceptance of the January 3 offer if the court had excluded those exhibits. Therefore, the result would have been the same had the court excluded those exhibits.

{¶ 44} **Count 2—Breach of Duty of Good Faith and Fair Dealing.** The plaintiffs assert in their amended complaint that the defendants had direct knowledge that the plaintiffs intended to sell the properties to effect a like-kind exchange and agreed to cooperate with the plaintiffs to complete the transaction. They assert that the defendants acted in bad faith by attempting to change the terms of the January 3, 2006 contract and acted unreasonably when failing to respond to plaintiffs' attempts to perform the contractual obligations. Therefore, the plaintiffs allege that the defendants breached the duty of good faith and fair dealing by refusing to perform the January 3 contract.[20] The plaintiffs argue in their motion for summary judgment that this is a recognized cause of action in the state of Ohio and that the defendants' actions clearly constitute a breach of the duty.

{¶ 45} The defendants argue in their motion that this claim fails because Ohio law does not recognize a separate and distinct claim for such a breach. The defendants assert that the duty exists as part of a contract claim and does not stand alone. It is their contention that the breach of good faith is subsumed into the breach-of-contract claim and because the plaintiffs could not establish breach

---

20. Amended Complaint, 34–36

of contract, their claim for breach of duty of good faith and fair dealing must fail as well. Further, they argue that since there was never a contract between the parties, there could not have been a breach of any contract that could constitute a breach of the duty.

{¶ 46} In Ohio, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Krukrubo v. Fifth Third Bank,* Franklin App. No. 07AP–270, 2007-Ohio-7007, 2007 WL 4532689, ¶ 18. "Public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. Any agreement—whether a lease, a secured loan, or something else—has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract." *Littlejohn v. Parrish,* 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶ 27. Since the duty of good faith and fair dealing is integral to any contract, the breach of that duty is thus integral to a cause of action for breach of contract. *Krukrubo* at ¶ 19. Therefore, in Ohio, outside of the context of insurance contracts, "the breach of the duty of good faith does not exist as a separate cause of action from a breach of contract claim." *Walton v. Residential Fin. Corp.,* 151 Ohio Misc.2d 28, 2009-Ohio-1872, 905 N.E.2d 1307, ¶ 10, citing *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 646, 671 N.E.2d 578. "Accordingly, 'an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim * * *.' " *Krukrubo* at ¶ 19, quoting *Interstate Gas Supply, Inc. v. Calex Corp.,* Franklin App. No. 04AP–980, 2006-Ohio-638, 2006 WL 328679, ¶ 98; *Walton* at ¶ 10, citing *Brickner* at 646.

{¶ 47} Based upon the case law cited, the court finds that in order to assert a claim for the breach of the duty of good faith and fair dealing, there must be a contract within which the implicit duty arises. In this case, the court has determined that there was never a contract between the Iretons and the defendants. Since the parties failed to execute a contract for the purchase of the property, the duty of good faith and fair dealing did not arise. Further, since the court has granted the defendants' motion for summary judgment on the breach-of-contract claim against them, that claim is no longer a part of this case. Since there is no longer a breach-of-contract claim, the claim of breach of duty of good faith and fair dealing cannot stand alone as a separate cause of action.

{¶ 48} Therefore, based upon the foregoing analysis and the competent, credible evidence before the court, the court finds that the defendants' motion for summary judgment on the plaintiffs' claim of breach of duty of good faith and fair dealing is well taken. The court finds no genuine issue of material fact remaining and further finds that reasonable minds can come to but one conclusion, and that

conclusion is adverse to the plaintiffs. The defendants, therefore, are entitled to judgment as a matter of law.

{¶ 49} **Counterclaim 1 of Katherine's Ridge—Breach of August 2005 Contract (Iretons).** Katherine's Ridge asserts in its counterclaim that the August 2005 contract required the plaintiffs to provide notice of any good-faith offer to purchase the Barkley Road properties by certified mail. It is Katherine's Ridge's contention that the Iretons breached this duty by failing to notify them by certified mail.

{¶ 50} The plaintiffs argue in their motion for summary judgment that no harm has been shown in the record and that the defendants accepted the first-refusal right on January 3, 2006, without regard to the mode of communication. The defendant, Katherine's Ridge, did not respond to this assertion in its July 13, 2009 memorandum in opposition. The court finds that since the parties submitted their motions on the briefs, the defendant's failure to respond is essentially an acquiescence to the plaintiffs' motion, as they failed to submit any contrary evidence. Therefore, the court finds that the plaintiffs' motion for summary judgment on the first counterclaim is well taken and is granted.

{¶ 51} With that being said, and for purposes of being thorough, the court notes that, even considering all of the evidence in the record, the defendant could not satisfy its burden under Civ.R. 56. To succeed on its breach-of-contract claim, all of the following elements must be proven: (1) that a binding contract or agreement existed, (2) that the asserting party performed its contractual obligations, (3) that the party against whom the claim is asserted failed to fulfill its contractual obligations without legal excuse, and (4) that the asserting party suffered damages as a result.

{¶ 52} Neither party is disputing that a valid and enforceable contract existed as of August 23, 2005, a contract that included a right of first refusal for the Barkley Road properties; thus, the first element of breach has been satisfied. For purposes of this decision, the court will assume that the defendant performed its contractual obligations under the August 23 contract, as there is no evidence to indicate that the defendant failed to pay the consideration for the right of first refusal. Therefore, the court finds that the second element of breach has been satisfied. Further, the court will assume that the third element has been satisfied, as the Iretons readily admitted in their separate suit against Korfhagen that the notices of the good-faith offers were not sent by certified mail. While there is some evidence that the first Singleton offer might have been sent by certified mail, the court will give the benefit of the doubt to the defendant and find that the plaintiff failed to fulfill its contractual obligation to send each good-faith offer by certified mail, as all offers were clearly not sent by that method.

**24**

■■ {¶ 53} The defendant's problem arises with the fourth element in a breach-of-contract action, i.e., that the asserting party suffered damages as a result. Not only must there be damages, but the damages must be a result of the plaintiffs' failure to notify by certified mail. The defendant fails to allege in their first counterclaim what their damages are, but instead alleges only that they've been damaged in an amount to be determined at trial. While the court can surmise that the damages are the loss of the property itself and the consequences of that loss to the defendant's development, the court finds that the overwhelming evidence indicates that the plaintiffs' failure to send notice of good-faith offers by certified mail was not the cause of that loss.

{¶ 54} The evidence presented pursuant to Civ.R. 56(C) proves that the defendant received notice of every offer, albeit by a different means than that provided for in the August 23 contract. The plaintiffs further did not hold the defendant to a strict timeline when determining whether the defendant would exercise the right of first refusal. For instance, the first Singleton offer was sent to Arnold on December 16, 2005. The defendant would then have 14 days to respond to that offer. Since Arnold was out of town until January 2, 2006, he did not respond to that letter until January 3, 2006. This was 18 days after the Singleton offer was sent to Arnold. Although the defendant's offer to purchase according to those terms was four days late, the evidence indicates that the plaintiffs still considered the offer to purchase. Further, in Korfhagen's letter dated February 8, 2006, he makes two separate counteroffers for the purchase of the property and gives Arnold until February 16, 2006, to respond. The court notes that pursuant to the evidence, this notice probably was not sent by certified mail. Further, the letter gives Arnold eight days rather than 14 days to respond. Despite this breach, Arnold responds on February 14, 2006, only six days after the letter was sent to him by Korfhagen. There were only two instances in which Arnold was given the opportunity to exercise the right and responded within adequate time to have his offers considered. Additionally, Arnold testified in his deposition that he responded to all of Korfhagen's noncertified correspondence.[21] However, he stopped responding once he lost faith in the Iretons and their counsel.[22]

{¶ 55} The harm was a result of the defendant losing faith in the plaintiffs and choosing not to go forward with the sale. The issue was not that the property was sold out from under the defendant, but rather that the defendant made a conscious choice not to proceed.

---

21. Arnold Deposition, 65.

22. Id.

{¶ 56} Based upon the foregoing, the court finds that all of the evidence indicates that the harm suffered by the defendant was not a result of the plaintiffs' breach but was instead a result of its own decision. Had there been evidence presented by the defendant that it did not actually receive the correspondence from Korfhagen due to the method of delivery, then the result would be entirely different. However, as it stands, the court finds that no genuine issue of material fact remains and that reasonable minds can come to but one conclusion and that conclusion is adverse to the defendant. Therefore, the court finds that the plaintiffs are entitled to judgment as a matter of law on the defendant's first counterclaim for breach of the August 23, 2005 agreement.

{¶ 57} **Counterclaim 2 of Katherine's Ridge—Breach of January 3, 2006 Contract (Iretons).** Katherine's Ridge asserts in its second counterclaim that to the extent that a valid contract was entered into on January 3, 2006, the Iretons breached that contract by failing to sell the property for the price stated in that contract. Further, Katherine's Ridge asserts that the Iretons repudiated this contract.

{¶ 58} As to the second counterclaim, the court has already determined that no contract existed on January 3, 2006. Further, the court has determined that Katherine's Ridge and the Iretons never entered into a valid and enforceable contract for the sale of the Barkley Road properties. Therefore, the court finds that since no contract existed on January 3, 2006, for the reasons previously discussed, the plaintiffs cannot be held liable for a claim of breach of contract. Thus, the court finds that there is no genuine issue of material fact remaining and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the defendant. Consequently, the court finds that the plaintiff is entitled to judgment as a matter of law on the defendant's second counterclaim for breach of the January 3, 2006 contract.

### THIRD PARTY DEFENDANTS, JOHN KORFHAGEN, ESQ., AND THE LAW OFFICE OF JOHN C. KORFHAGEN, INC., MOTION FOR SUMMARY JUDGMENT

{¶ 59} The third-party defendant filed its motion for summary judgment on March 16, 2009, asserting that since it had already entered into a good-faith settlement with the plaintiffs, the defendant/third-party plaintiff cannot maintain a claim for contribution pursuant to R.C. 2307.28. Further, the third-party defendant contends that Katherine's Ridge admits in its third-party complaint that its lawsuit against Korfhagen is based upon the same facts as the previous

lawsuit between the Iretons and Korfhagen.[23]

{¶ 60} R.C. 2307.28 provides: "When a release * * * is given in good faith to one of two or more persons for the same injury or loss to person or property * * * both of the following apply: (A) * * * (B) The release or covenant discharges the person to whom it is given from all liability for contribution to any other tortfeasor." The Iretons sought damages against their attorney, Korfhagen, in 2008 CVA 0974. Pursuant to the affidavit of Rick Weil, the Iretons and Korfhagen entered into a confidential settlement agreement on July 14, 2008, leading to the dismissal of case No. 2008 CVA 0974.[24] Further, Weil testified that this settlement was entered into in good faith.[25] Therefore, the court finds that the Iretons and Korfhagen entered into a settlement agreement in good faith and that the settlement agreement released Korfhagen from all claims against him in exchange for an agreed consideration. The defendants/third-party plaintiffs have failed to submit any evidence pursuant to Civ.R. 56(C) that would contradict the testimony of attorney Rick Weil, nor did they argue this issue in their response.

{¶ 61} Further, the defendant/third-party plaintiff admits in its third-party complaint that its lawsuit against Korfhagen is based upon the same facts as the previous settled lawsuit between the Iretons and Korfhagen.[26] Thus, the defendant/third-party plaintiff, Katherine's Ridge, is seeking contribution from Korfhagen for damages for which they may be liable and for which Korfhagen has already settled in a separate case. Should the court find that Korfhagen could be held liable for contribution to the defendant/third-party plaintiff, then the court is essentially forcing Korfhagen to pay the same amount twice. The court finds that this would abrogate the purpose behind R.C. 2307.28.

{¶ 62} Additionally, in Ohio, an attorney is immune from liability to any third person if it arose from his performance as an attorney in good faith on behalf of and with the knowledge of his client. *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 76, 512 N.E.2d 636, quoting *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158. This is true unless the third person was in privity with the client or unless the attorney acted maliciously. Id. Privity exists when "the client and the third person share a mutual or successive right of property or other interest." *Sayyah v. Cutrell* (2001), 143 Ohio App.3d 102, 111–112, 757 N.E.2d 779.

---

23. Katherine's Ridge's Answer/Third–Party Complaint, filed October 30, 2008, 11–12, ¶ 5–7.

24. Affidavit of Rick Weil, 3.

25. Id.

26. See Katherine's Ridge's Answer/Third–Party Complaint, 11–12, ¶ 5–7.

{¶ 63} There is no dispute that Korfhagen and his firm represented the Iretons and not Katherine's Ridge. Therefore, Korfhagen's privity was with the Iretons. Further, the Iretons do not have the requisite mutual interest with these parties such that their privity would transfer to Korfhagen. Instead, the Iretons and Katherine's Ridge have a competing interest, since they stood on opposite sides of a real estate transaction. Katherine's Ridge had its own attorney; thus, it was not relying at any time on Korfhagen's legal advice.

{¶ 64} Since there is no privity between the Iretons and Korfhagen or the Iretons and the defendant/third-party plaintiff, Katherine's Ridge must allege and prove that Korfhagen acted maliciously in his representation of the Iretons. The third-party complaint fails to allege that Korfhagen acted maliciously in representing the Iretons. Instead, the third-party complaint alleges that Korfhagen breached a duty owed to his clients by sending a letter by facsimile rather than by certified mail. There is no evidence in the record that the court may consider, pursuant to Civ.R. 56(C), that would indicate that Korfhagen acted maliciously. Instead, the defendant/third-party plaintiff argues, in its response to the motion for summary judgment, that Korfhagen's actions were malicious and that a jury could determine that "Korfhagen's half-truths and utter falsehoods were done maliciously with intent to deceive Mr. Arnold (as they successfully did)." [27] With that said, the court finds that if the defendant/third-party plaintiff intended to make such allegations, it should have been made within the third-party complaint. It cannot now assert a claim on summary judgment that was not contained within its complaint. See *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975; *White v. Mt. Carmel Med. Ctr.*, 150 Ohio App.3d 316, 2002-Ohio-6446, 780 N.E.2d 1054. Consequently, the court finds that the defendant/third-party plaintiff has failed to allege and prove that Korfhagen acted maliciously in his representation of the Iretons.

{¶ 65} Therefore, since Korfhagen has been released pursuant to a good-faith settlement agreement for the same injury or loss that the defendant/third-party plaintiff is complaining of, the court finds that the settlement agreement also discharged him from all liability for contribution to any other tortfeasor, including Katherine's Ridge. Further, Korfhagen and his firm are immune from liability to any third person as a result of his representation of the Iretons since neither he nor the Iretons were in privity with the defendant/third-party plaintiff and since maliciousness was not alleged or proven. Thus, the court finds that, having construed the evidence in a light most favorable to Katherine's Ridge, there is no genuine issue of material fact remaining and reasonable minds can come to but

---

27. Memorandum of Defendant/Counterclaim Plaintiff/Cross–Claim Plaintiff/Third–Party Plaintiff Katherine's Ridge Development, L.L.C., to Third–Party Defendant's Motion for Summary Judgment, filed July 20, 2009, 3.

one conclusion, and that conclusion is adverse to Katherine's Ridge. Consequently, the court finds that John Korfhagen and the Law Office of John C. Korfhagen, Inc., are entitled to judgment as a matter of law.

### DEFENDANT JAMES ARNOLD'S
### MOTION FOR SUMMARY JUDGMENT

{¶ 66} Defendant Arnold filed his motion for summary judgment on July 17, 2009. In his motion, Arnold asserts two separate arguments: (1) that he is entitled to summary judgment by virtue of the fiduciary shield doctrine and (2) that he is entitled to summary judgment because at all times he was acting as legal counsel for JTD and/or Katherine's Ridge. The plaintiffs filed their motion for summary judgment on July 10, 2009, arguing that all of the elements of a claim for tortious interference with a contract have been satisfied and that they are entitled to summary judgment on that issue.

{¶ 67} The court is confused as to which contract the plaintiffs are alleging Arnold tortiously interfered with. In their complaint, the plaintiffs assert that they suffered financial injury as a result of Arnold's interference with their contract to Singleton.[28] However, in their motion for summary judgment, the plaintiffs argue that Arnold knew about the January 3 contract, which was alleged by the plaintiffs to exist between them and Katherine's Ridge, but that he procured the breach of that contract without justification.[29] Since a party cannot assert new or different claims in a motion for summary judgment than those found in the complaint, the court must determine whether either the plaintiffs or the defendant Arnold is entitled to summary judgment on the amended complaint, which asserts that Arnold tortiously interfered with the contract between the Iretons and Singleton.

{¶ 68} The court will first address Arnold's involvement with JTD, since the purchase contract containing the right of first refusal was initially between JTD and the Iretons. Arnold testified in his deposition that he was the manager of JTD and at all times was the attorney for JTD.[30] Arnold contends that he was the attorney for JTD, although that designation does not appear in the operating agreement for the company.[31] Arnold asserts throughout his deposition that he

---

28. Amended Complaint, ¶ 42.

29. Plaintiffs' Motion for Summary Judgment, filed July 10, 2009, 8–9.

30. Deposition of Jim Arnold, filed July 13, 2009, 10.

31. Id. at 16.

acted as legal counsel for JTD in the negotiations with the Iretons.[32] This representation clearly included the collaborative drafting of the purchase agreement with Korfhagen.[33] Further, Arnold testified that after negotiating with the Iretons, he accepted the terms of the purchase agreement on behalf of and with authority from JTD.[34] The court finds that the totality of Arnold's deposition indicates that his communications with Korfhagen were in his capacity as attorney for JTD.

{¶ 69} While it may be true, as the plaintiffs point out in their response to the motion for summary judgment, that Arnold was also manager of JTD, the evidence shows that his actions as they relate to JTD were in a legal capacity rather than a managerial capacity. For instance, in his deposition, Arnold testified that another member of the company, Tim Conners, spearheaded the negotiations with the Iretons; thus, it is clear that Arnold was not the only member involved in the negotiations for JTD.[35]

{¶ 70} Additionally, Arnold testified that meetings were held with members of the company, but he could not remember a specific meeting in which the acquisition of the property was discussed.[36] He was asked about specific instructions given to him by the other members of JTD but was instructed by his attorney not to answer, as those discussions were privileged.[37] Arnold did state, however, that he was sure that there were meetings at which the course of direction was discussed.[38] Thus, the court finds that the decision to enter into the initial purchase agreement for the Clermontville Laurel Road property was made collaboratively by him and the other members of JTD. There has been no evidence proffered by the plaintiffs that indicates that Arnold was not acting as an attorney for JTD when he negotiated the purchase agreement with Korfhagen.

{¶ 71} Since the evidence is clear that Arnold was acting in his capacity as attorney for JTD, the court finds that the rule of law previously set forth in relation to Korfhagen applies. Thus, Arnold is immune from liability to the

---

**32.** Id. at 10, 19, 21.

**33.** Id. at 29–30.

**34.** Id. at 48.

**35.** Arnold deposition, 25, 30; Defendant JTD Realty Investments, L.L.C.'s Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents, filed July 23, 2009, Interrogatory 4.

**36.** Id. at 22.

**37.** Id.

**38.** Id. at 23.

Iretons if that liability arose from his performance as an attorney in good faith on behalf of and with the knowledge of JTD. The plaintiffs argue that Arnold's performance as an attorney in this matter was in bad faith. However, as to JTD, the court finds that, at the time the dispute arose, the contract had already been assigned from JTD to Katherine's Ridge. Thus, nothing Arnold did on behalf of JTD was in bad faith. Instead, the dispute arose between Katherine's Ridge and the Iretons over the right of first refusal contained within the original contract. Further, the evidence, as previously cited, indicates that Arnold acted on behalf of and with the knowledge of JTD when it accepted the terms of the purchase agreement. Therefore, there has been no competent, credible evidence presented of bad faith in relation to his representation of JTD.

{¶ 72} Consequently, the court finds that Arnold is immune from liability for his actions on behalf of JTD unless the Iretons were in privity with JTD or unless Arnold acted maliciously. At the time of contract negotiations, there was no privity between the Iretons and JTD, since they stood on opposite and competing sides of a potential real estate transaction. Further, it has not been alleged, or argued, that Arnold acted maliciously in negotiating the original contract. Therefore, the court finds that in relation to his representation of JTD, Arnold is immune from liability to the Iretons. Since the court finds that Arnold was acting as attorney for JTD, the court need not address his arguments under the fiduciary-shield doctrine.

{¶ 73} After the Iretons and JTD executed the contract, JTD assigned its interests under the contract, including the right of first refusal, to Katherine's Ridge. Arnold is also the manager of Katherine's Ridge, pursuant its operating agreement. Arnold argues that he acted in his capacity as attorney for Katherine's Ridge and thus cannot be held liable to the Iretons. Arnold testified in his deposition that he performed legal services for Katherine's Ridge.[39] When asked if he ever billed Katherine's Ridge, Arnold testified that he has a running bill but has yet to send them an actual bill for his services.[40] Additionally, when asked about the Singleton offer to purchase the Barkley Road property, Arnold responded that he probably discussed it with the other members of Katherine's Ridge and, at some point, his client authorized him to accept the terms of that good-faith offer.[41] The terms of the Singleton offer were accepted by Arnold on behalf of his client.[42]

---

39. Arnold Deposition, 17.

40. Id. 17.

41. Arnold Deposition, 24–25, 46.

42. Id. at 48.

{¶ 74} In addition to Arnold's testimony, Christopher Longwell, the manager of Scott Street Partners VIII, testified that Graydon, Head, and Ritchey served as counsel for JTD and that he could not recall whether Arnold was also an attorney for Katherine's Ridge.[43] Further, he stated that the operating agreement for Katherine's Ridge did not name Arnold as its attorney.[44] The JTD operating agreement also failed to designate Arnold as its attorney, but he clearly acted as one. The fact that Longwell could not remember whether Arnold was Katherine's Ridge's attorney is different than him stating that Arnold was not Katherine's Ridge's attorney. Thus, the court finds this particular statement by Longwell to be unpersuasive.

{¶ 75} Moreover, Singleton testified in his affidavit that he was told by Ireton that he could not sign the agreement until "the party represented by Jim Arnold" was given an opportunity to purchase.[45] This indicates that Ireton was aware that Arnold was representing Katherine's Ridge. Further indicating that Arnold was acting as legal counsel for Katherine's Ridge is the plaintiffs' own recognition that he was in its motion for summary judgment, filed May 29, 2009. In the motion, the plaintiffs assert that "[i]t is *undisputed* that the notice was given on December 15, 2005 and accepted by JTD's and *Katherine's Ridge's attorney*, as agent for Defendants, on January 3, 2006." (Emphasis added.)[46] Thus, the court finds that the plaintiffs acquiesced in their motion to the fact that Arnold was acting as attorney for Katherine's Ridge.

{¶ 76} The court finds that based upon the evidence before it, there is no genuine issue of material fact remaining and reasonable minds could only conclude that Arnold was acting as attorney for Katherine's Ridge. It is clear that Arnold was providing legal services for Katherine's Ridge, and it makes no difference that Katherine's Ridge was also represented by another firm. The court must then determine whether the attorney-immunity doctrine that applied to Korfhagen also applies to Arnold in relation to his representation of Katherine's Ridge.

{¶ 77} Based upon the foregoing, Arnold is immune from liability to the plaintiffs if liability arose from his performance as an attorney in good faith on behalf of and with the knowledge of Katherine's Ridge. This is true unless the

---

**43.** Scott Street Partners VIII and JTD are the only two members of Katherine's Ridge. See Deposition of Christopher Longwell, filed July 21, 2009, 7.

**44.** Id. at 18.

**45.** Affidavit of Ronald Singleton, filed July 27, 2009, ¶ 3.

**46.** Plaintiff's Motion for Summary Judgment, filed May 29, 2009, 4.

third person was in privity with the client or unless the attorney acted maliciously.

{¶ 78} The allegations in the amended complaint are that Arnold knew that the Iretons entered into a new contract with Singleton after he repudiated Katherine's Ridge's January 3 contract. It is alleged that he knew that time was of the essence due to the desire to effect a like-kind exchange prior to the expiration of the May 8, 2006 deadline, yet he failed to respond to Korfhagen's attempts to contact him by telephone, e-mail, and ordinary mail regarding the closing with Singleton. It is alleged that this silence and lack of cooperation were willful and in bad faith. It is the plaintiffs' contention that the defendants were angry because of a failed sewer permit on the Clermontville Laurel Road properties, and thus they sought to sabotage the sale of the Barkley Road properties.

{¶ 79} The court will first address the allegation that Arnold's alleged failure to respond to Korfhagen's attempts to contact him by telephone, e-mail, and ordinary mail regarding the closing with Singleton constituted bad faith. It is not disputed that Arnold responded to the first Singleton offer with a letter of intent to purchase pursuant to the terms of that offer. The court can only surmise, then, that the plaintiffs are alleging that the failure to respond involves the second Singleton offer. Arnold responded to all of the letters involving Singleton up to the point of March 17, 2006, when he was notified that the plaintiffs had signed the contract with Singleton and were proceeding to complete the sale of the property to Singleton.

{¶ 80} Arnold sent a letter on February 14, 2006, requesting that the plaintiffs proceed to the sale of the property to his clients according to the terms of the January 3 letter. This is, in essence, a rejection of Singleton's second contract, and thus constituted a decision not to exercise the right of first refusal pursuant to the terms of that contract. The next correspondence is on February 27, 2006. This is the first exhibit that the plaintiffs wanted stricken from the record. If the court were to skip this exhibit, the next correspondence is from Arnold making a new offer for the property. There would be no evidence that Korfhagen responded to the February 14 letter from Arnold stating whether the plaintiffs would proceed according to the January 3 terms; thus Arnold made a new offer on March 7, 2006. Then, Korfhagen responded on March 17, 2006, stating that the plaintiffs were proceeding on the sale of the property to Singleton. The plaintiffs also wanted this exhibit stricken; thus the next correspondence would have been the first Krause offer, had the court stricken the exhibit. Subsequent to this, there was no correspondence from the defendants. Therefore, if the court had stricken both exhibits, it would have found that Arnold responded to the second Singleton offer by demanding that the plaintiffs sell the property to

his clients according to the terms of Singleton's first offer, thus rejecting the second offer.

{¶ 81} The court did not, however, strike those exhibits for the reasons previously set forth. Considering those exhibits, the court finds that Arnold responded up until the point when he was notified by Korfhagen that the plaintiffs were proceeding on the sale of the property to Singleton. Therefore, the court finds that whether or not it considers those exhibits is immaterial, as Arnold responded to all attempts by Korfhagen to discuss the Singleton contracts with him.

{¶ 82} Further, the court finds that even if Arnold failed to respond to the Singleton offers, he was under no obligation to do so under the original contract for the Clermontville Laurel Road properties.[47] That contract provides that the defendant had 14 days to respond with an intent to purchase if it chose to exercise its right of first refusal. There is no provision requiring that the defendant notify the seller if it chose not to exercise that right. Therefore, the court finds that Arnold was under no obligation to respond, and any failure to do so does not constitute bad faith on his part.

{¶ 83} Additionally, the plaintiffs allege in their complaint that Arnold and the defendants were angry with them because of a failed sewer permit on the Clermontville Laurel Road properties and had threatened to sabotage the sale of the Barkley Road properties as a result. In relation to the failed sewer permits, Ireton testified that Tim Connors told him that they had ways to hold up the 1031 exchange if they found out that the Iretons had anything to do with the sewer issue.[48] Further, Ireton testified in his deposition that based upon his conversations with Tim Connors, he was of the opinion that Arnold and the other members of Katherine's Ridge had some malice directed toward him.[49] Insofar as Ireton's knowledge of the subject, the basis of that knowledge came from a phone call with Tim Connors.[50] However, Arnold testified in his deposition that the sewer issue was minimal, as they already owned so much of the property that the plaintiffs' property was minimal in comparison.[51] Further, the use of a public system rather than a private system would have made the development more

---

47. Deposition of Archie Ireton, 42–43, 162–163. See also Deposition of Archie Ireton, KRD Exhibit 2, ¶ 13.

48. Deposition of Archie Ireton, 125–126.

49. Id. 143–145.

50. Id. 146.

51. Deposition of Jim Arnold, 40.

valuable.[52] Arnold testified that he was not angry with the Iretons over anything.[53]

{¶ 84} Finally, the court notes that the plaintiffs allege that a threat of protracted litigation by JTD against the Iretons caused them not to close with Singleton. The only potential lawsuit discussed by Ireton was the refusal to close on the sale of the Clermontville Laurel Road properties to JTD, since JTD had not obtained financing.[54] According to Ireton, the threat at the initial closing had nothing to do with the 1031 like-kind exchange.[55] The only other threat of litigation testified to in the depositions was when Tim Connors told Ireton that Arnold was aware of the failure to use certified mail in notifying the defendant according to the right of first refusal and that they could use this to stop any sale of the property.[56] However, Arnold testified that he did not intentionally ignore the notices from Korfhagen in hopes to use Korfhagen's breach of the August 23, 2005 agreement in an attempt to sue the Iretons.[57]

{¶ 85} Ireton further testified that in terms of any action that can be attributed to Arnold as attorney, separate and apart from his role as manager of Katherine's Ridge, is that he was "very hard to deal with." [58] His complaint with Arnold was that "who knows what goes on inside of a partnership, whether he passed the stuff on or not." [59] Other than Ireton's opinion of Arnold, there are no facts in the record to indicate that Arnold acted in his role as attorney for Katherine's Ridge in bad faith or with malice. The only factual evidence presented indicates that Arnold did what any attorney would do in trying to negotiate the fairest deal for his client. Further, Tim Connors, as an agent of JTD and Katherine's Ridge, made the statement that the defendant could block the 1031 exchange. The statement was not made by Arnold in his capacity as attorney and is instead directly attributable to Connors. Even if the statement could be attributed to Arnold, it would be in his capacity as a manager and not as an attorney.

52. Id. 44.

53. Id. 45.

54. Deposition of Lois Ireton, filed July 13, 2009, 10. See also Deposition of Archie Ireton, 147.

55. Deposition of Archie Ireton, 147–148.

56. Deposition of Archie Ireton, 153–154.

57. Deposition of Jim Arnold, 66–67.

58. Deposition of Archie Ireton, 149.

59. Id. at 150.

{¶ 86} Therefore, based upon the foregoing, the court finds that in regard to Arnold's representation of the defendant, there is no evidence that he acted in bad faith in that capacity. The only complaint by the Iretons is with the members of Katherine's Ridge, or the "people with the money were the ones that were upset."[60] There is no evidence that Arnold, as an attorney, was upset with the plaintiffs and was, in bad faith, attempting to interfere with a sale.

{¶ 87} Since the evidence indicates that Arnold was acting, in good faith, as an attorney for Katherine's Ridge, there must be evidence that he acted maliciously or that Katherine's Ridge and the Iretons were in privity with one another. The court finds that there has been no evidence presented pursuant to Civ.R. 56(C) to indicate that Arnold acted maliciously in his capacity as an attorney. Further, Katherine's Ridge and the Iretons were in privity for the purchase of the Clermontville Laurel Road properties, but there was never a contract between them and the defendant for the purchase of the Barkley Road properties; thus, the court finds that the parties were not in privity. Since Arnold was acting as an attorney and in good faith, and since there is no evidence of malice or evidence that the parties were in privity, the court finds that Arnold is immune from liability as an attorney in this case.

{¶ 88} Since the court has determined that Arnold is immune from liability due to the attorney-immunity doctrine, the court need not address his argument under the fiduciary-shield doctrine.

{¶ 89} Based upon the foregoing, and the competent, credible evidence before the court, the court finds that there is no genuine issue of material fact remaining as to Arnold's immunity for his representation of Katherine's Ridge and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the plaintiffs. Therefore, the court finds that the defendant James Arnold is entitled to judgment as a matter of law, and his motion for summary judgment is hereby granted.

{¶ 90} The court further finds that even assuming that the plaintiffs are correct and the elements of tortious interference are satisfied, Arnold cannot be held liable, since he was an attorney acting in good faith and without malice or privity. Therefore, the plaintiffs' motion for summary judgment is denied.

## CONCLUSION

{¶ 91} Based upon the foregoing, and the competent, credible evidence before the court, the court finds as follows:

---

60. Deposition of Archie Ireton, 145.

{¶ 92} The court hereby grants the motion for summary judgment filed by the defendant Katherine's Ridge on the plaintiffs' claims of breach of contract and breach of duty of good faith and fair dealing. The court further denies the plaintiffs' motion for summary judgment on those same claims.

{¶ 93} The court hereby grants the motion for summary judgment filed by the defendant JTD on the plaintiffs' claims of breach of contract and breach of duty of good faith and fair dealing. The court further denies the plaintiffs' motion for summary judgment on those same claims.

{¶ 94} The court hereby grants the plaintiffs' motion for summary judgment on the defendant Katherine's Ridge's counterclaims for breach of contract. The court further denies the defendant's motion for summary judgment on those same counterclaims.

{¶ 95} The court hereby grants the third-party defendant John Korfhagen's motion for summary judgment on the third-party complaint filed by Katherine's Ridge. The court further denies the third-party plaintiff Katherine's Ridge's motion for summary judgment on the third-party complaint.

{¶ 96} The court hereby grants the defendant James Arnold's motion for summary judgment on the plaintiffs' claim of tortious interference with a contract. The court further denies the plaintiffs' motion for summary judgment on that same claim.

{¶ 97} Based upon the findings of the court, the case is hereby terminated in its entirety pursuant to the various summary judgments that have been granted.

{¶ 98} It is ordered that this decision shall serve as the judgment entry in this matter.

Judgment accordingly.